HANAUER ET AL. *v.* ELKINS, PRESIDENT OF THE UNIVERSITY OF MARYLAND, ET AL.

(Two Appeals In One Record.)

[No. 173, September Term, 1957.]

*Decided June 3, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, PRESCOTT and HORNEY, JJ., and CARTER, J., Chief Judge of the Second Judicial Circuit, specially assigned.

*Robert B. Myers* and *Oliver Ellis Stone* for the appellants.

*Clayton A. Dietrich, Assistant Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

The appellants, Kenneth George Hanauer and Jack A. Crabill, claiming to be conscientious objectors, filed petitions in the Circuit Court for Prince George's County on January 16, 1957, for writs of mandamus directing the President and Board of Regents of the University of Maryland to allow them to continue as students in the University without conforming to the general requirement that all able-bodied male undergraduates take basic military training. The petitions were denied by the trial court and the petitioners appealed. Both cases involve the same constitutional questions and substantially the same facts and were consolidated for the purpose of hearing the appeals. The writ was denied in the Hanauer case and judgment entered in favor of the appellees after full hearing and consideration of testimony. In the Crabill case, judgment was entered for the appellees by order

of the trial court sustaining a demurrer to the petition, without leave to amend.

The material facts established by the evidence in the Hanauer case and alleged in the petition in the Crabill case are substantially similar. The Board of Regents of the University of Maryland adopted as a part of the curriculum of the University a course in the Reserve Officer Training Corps, which is conducted by United States Air Force personnel. The University, as a land-grant college, received federal funds under the Morrill Act (7 U. S. C. A., Sec. 304). Pursuant to the provisions of that Act, the University is required to offer a course in Reserve Officer Training Corps, which may be either elective or mandatory in the discretion of the University. The regulations concerning this course which have been adopted by the Board of Regents require that all male students under thirty years of age, who are citizens of the United States, except those specifically exempted by the regulations, take the basic two-year course during their first two years after matriculation. Included in the exemptions are those students who have completed the basic course in other approved units of the Army, Navy or Air Force R. O. T. C., or have served in the Army, Navy, Marine Corps, Coast Guard, or Air Force, for a period of time long enough to be considered equivalent to the basic training in the AFROTC course. Conscientious objectors are not expressly exempted.

The basic course was described as being "designed as a course training a man to better perform his duties as a citizen of the United States and of his community, to understand the impact of international tensions, world organization, the place of the United States in the family of nations, and his responsibility as a citizen to support his country." The training includes instruction in the nature of a military force, that is, how the Army, Navy and Air Force combine together to form the defense force of the nation and their mission and responsibility as a combined defense force. The basic course involves learning to engage in military drill as a unit, and the wearing of an Air Force uniform, but completion of the basic course does not impose any subsequent military obligations.

The purpose of the elective advanced course of two years, following the basic course, is to instruct Junior Officers of the United States Air Force and provide a major source of officer personnel for the regular Air Force. Insofar as the basic course is necessary in order to take the advanced course, the objectives of the advanced course are reflected in the basic course. United States Air Force Officers conduct all classroom academic work and supervise drill on the field. Regulations covering the type of training offered by the course are the regulations of the United States Air Force which have been adopted by the University.

Both Hanauer and Crabill claimed to be conscientious objectors. Both profess to be followers of the teaching of Jesus Christ and believe from his teaching that violence and the killing of human beings is against the principles of the Christian religion. They are opposed to war or military training in preparation for war, as being contrary to their religious beliefs. Hanauer is a member of the Evangelical Reformed Church. Crabill is a member of the Church of the Brethren. The tenets of neither of these denominations require that its members be conscientious objectors, but it is their policy to show consideration to those members who are conscientious objectors and support them in their conviction. The sincerity of this religious belief by Hanauer and Crabill is not questioned by the officials of the University in either case. Prior to their enrollment, both Hanauer and Crabill were classified by their local draft board as conscientious objectors under the provisions of the Universal Military Training and Service Act (50 U. S. C. A. App. 456 (j)). This section of the Act provides for exemption from military training of conscientious objectors who are opposed to participation in war in any form and their assignment to work of national importance under civilian direction. Pursuant to this classification, each of the appellants served two years in civilian work after being inducted into service under the Selective Service Act and received their certificates of discharge as draftees.

Hanauer is twenty-four years of age and a citizen of Maryland. He enrolled as a third year student in the College of

Education in September, 1956. He desired to become a student at the University because the cost is lower than a private school and he could receive the training required to become a high school teacher. At the time of his admission, he informed the officials he was a conscientious objector and that he could not take the required two year basic AFROTC course because it was against his religious beliefs. The officials of the University, through inadvertence, neglected to consider his case until after he had been admitted as a student and had entered upon the first semester. After consideration they advised him he must take the course or leave the University at the end of the first semester in January, 1957.

Crabill is twenty-five years of age and a citizen of Maryland. He enrolled as a first year student in the College of Education in September, 1956. At the time of his enrollment he likewise advised the University officials that he was a conscientious objector. Upon being informed that he could not become a student unless he agreed to take the prescribed two year, basic course in AFROTC, he agreed to take the course under written protest. After experiencing the requirements of the course he notified the officials, prior to the end of the first semester, that he could not continue as experience showed it was a military program in violation of his religious beliefs. The officials then notified him he must leave the University at the end of the semester because of his failure to take this required course. We think no distinction should be drawn between Crabill and Hanauer for present purposes, although the appellees argue that there is evidence of a waiver on Crabill's part.

The appellants' first contention is that the mandatory requirement that they take the basic course is contrary to the charter of the University and the Maryland Constitution. The charter of the University provides, in part, that " 'no sectarian or partisan test shall be allowed or exercised * * * in the admission of students thereto, or for any purpose whatever * * *' and that the University shall be maintained for students of '* * * every religious denomination who shall be freely admitted to equal privileges of education and to all the honors of the college according to their merit without re-

quiring or enforcing any religious or civil test'." Art. 36 of the Maryland Declaration of Rights provides that "all persons are equally entitled to protection in their religious liberty; wherefore, no person ought, by any law to be molested in his person or estate, on account of his religious persuasion or profession, or for his religious practice, unless, under the color of religion, he shall disturb the good order, peace or safety of the State, or infringe the laws of morality, or injure others in their natural, civil or religious rights * * *." Art. 37 forbids a religious test as a qualification for public office. It seems clear that the University, in requiring the basic course as a part of the curriculum, is not imposing a religious test. The same contention was considered and rejected by this Court in *University v. Coale,* 165 Md. 224, 235. The petitioner in that case was not required to assume any obligation to bear arms in the service of the State or the United States, but was required to take a course similar in all material aspects to that now prescribed. The question is, as it was in the case cited, simply whether the policy of the University must yield to the views of the petitioners that the prescribed course is at variance with their personal and pacifist beliefs. The test of eligibility to attend the University is not directed at these petitioners. They are asserting a right to attend the University without compliance with a general condition which they are unwilling to meet, because of religious convictions personal to them. We think the Regulations adopted by the Board of Regents are well within any limitations imposed by the Constitution and laws of this State.

The appellants invoke the protection of the First and Fourteenth Amendments of the Federal Constitution. We entertain no doubt that the University of Maryland is a branch or agency of the State government. *University v. Murray,* 169 Md. 478, 483. If its exclusionary policy towards persons who are otherwise qualified, but who refuse to take the prescribed basic course, is a violation of rights guaranteed by the Federal Constitution, then the policy of the State must yield. But we are not persuaded that such rights exist. The case of *University v. Coale, supra,* was appealed to the Su-

preme Court of the United States, but the appeal was dismissed for want of a substantial federal question. 290 U. S. 597. In *Hamilton v. University of California,* 293 U. S. 245, it was held by a unanimous court that a conscientious objector was properly excluded from the State University because of his refusal to take the required course in the R. O. T. C. Mr. Justice Butler, for the court, said (p. 262) : "Taken on the basis of the facts alleged in the petition, appellants' contentions amount to no more than an assertion that the due process clause of the Fourteenth Amendment as a safeguard of 'liberty' confers the right to be students in the state university free from obligation to take military training as one of the conditions of attendance. Viewed in the light of our decisions that proposition must at once be put aside as untenable." Mr. Justice Cardozo, concurring "to say an extra word", and joined by Justices Brandeis and Stone, said (p. 266) : "The First Amendment, if it be read into the Fourteenth, makes invalid any state law 'respecting an establishment of religion or prohibiting the free exercise thereof'. Instruction in military science is not instruction in the practice or tenets of a religion. Neither directly nor indirectly is government establishing a state religion when it insists upon such training. Instruction in military science, unaccompanied here by any pledge of military service, is not an interference by the state with the free exercise of religion when the liberties of the constitution are read in the light of a century and a half of history during days of peace and war. * * * Manifestly a different doctrine would carry us to lengths that have never yet been dreamed of. The conscientious objector, if his liberties were to be thus extended, might refuse to contribute taxes in furtherance of a war, whether for attack or for defense, or in furtherance of any other end condemned by his conscience as irreligious or immoral. The right of private judgment has never yet been so exalted above the powers and the compulsion of the agencies of government. One who is a martyr to a principle—which may turn out in the end to be a delusion or an error—does not prove by his martyrdom that he has kept within the law."

The appellants contend that the authority of the *Hamilton*

case has been undermined by the overruling of the cases of *U. S. v. Macintosh,* 283 U. S. 605, *U. S. v. Bland,* 283 U. S. 636, and *U. S. v. Schwimmer,* 279 U. S. 644, by the later case of *Girouard v. U. S.,* 328 U. S. 61. These cases all dealt with naturalization, and turned upon a question of the construction of Acts of Congress. Mr. Justice Douglas, for the court, in the *Girouard* case, said (p. 63) : "The *Schwimmer, Macintosh* and *Bland* cases involved, as does the present one, a question of statutory construction." The constitutional power of Congress to withhold citizenship upon condition that the applicant swear to bear arms was assumed. There was no intimation in either the majority or dissenting opinion that the *Hamilton* case was overruled.

The appellants also rely upon the case of *W. Va. State Board of Education v. Barnette,* 319 U. S. 624, overruling *Minersville School District v. Gobitis,* 310 U. S. 586, and holding unconstitutional a state act requiring a flag salute. But the *Hamilton* case was not overruled. In fact, it was cited and distinguished in the majority opinion by Mr. Justice Jackson, on the grounds that attendance in the *Hamilton* case was not compulsory, and because the State "has power to raise militia and impose the duties of service therein upon its citizens." There were also intimations that the requirement had no substantial or apparent relation to the public welfare, and that the flag salute was a form of utterance compelling the students to declare a belief. Mr. Justice Frankfurter in his dissent, conceded that the *Hamilton* case was not overruled, but found it impossible to distinguish it, at least upon the first ground assigned. We need not speculate as to where the line may ultimately be drawn or redrawn. Unless and until the *Hamilton* case is overruled, we think it is controlling, so far as the interpretation of the Federal Constitution is concerned, in its application to the facts of the instant case.

The appellants further contend that since they have completed their obligation to serve under the Universal Military Training and Service Act, by performance of "civilian work contributing to the maintenance of the national health, safety, or interest", it is a violation of their "privileges and immuni-

ties", under the Fourteenth Amendment to require them to take the AFROTC basic course. But we think the answer is that the Act of Congress according the exemption was a matter of grace, not conferring any federal right that would preclude this State from refusing to accord an equivalent exemption to students applying for admission to the State University. Cf. *In re Summers*, 325 U. S. 561, 572. If we assume, without deciding, that Congress has any Constitutional power to supersede the State policy in the training of its youth, it is sufficient to say that Congress has not yet attempted to do so. Nor do we think that the requirement is discriminatory, or denies the equal protection of the laws to these appellants. The appellants have not taken the prescribed course elsewhere, and the Regulations of the University require all persons in their age group to take the course if they have not taken it elsewhere. *Brown v. Board of Education*, 347 U. S. 483, relied on by the appellants, turned upon a question of racial discrimination. *Fowler v. Rhode Island*, 345 U. S. 67, and cases therein cited, turned upon an issue of freedom of speech. We think these cases are readily distinguishable and not in point.

*Judgments affirmed, with costs.*