TORCASO v. WATKINS, Clerk

[No. 199, September Term, 1959.]

*Decided June 30, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Leo Pfeffer* and *Joseph A. Sickles,* with whom were *Carlton R. Sickles, Sanford H. Bolz, Bruce N. Goldberg* and *Sickles & Sickles* on the brief, for the appellant.

*Stedman Prescott, Jr., Deputy Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellee.

Brief of *amicus curiae* in support of the appellant filed by *Lawrence Speiser, George Kauffman, Laurence J. Cohen* and *Rowland Watts* for the American Civil Liberties Union.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Montgomery County dismissing a petition for mandamus against the Clerk of that court, after a demurrer to the petition had been sustained. The petition alleged, and the demurrer admitted, that the appellant, a citizen of the United States and a resident of Montgomery County for more than two years past, had been duly appointed by the Governor a notary public in and for that County, but when he went to the Clerk's office to obtain his commission and qualify for the office, the Clerk requested him to take and subscribe to a certain oath and declaration. The appellant declined to do so. Thereupon, the

appellee refused to deliver the commission to the appellant, and suit followed.

The oath and declaration tendered to him read as follows:

"State of Maryland, Montgomery County ss:

In the presence of Almighty God, I, Roy R. Torcaso, do solemnly promise and declare that I will support the Constitution of the United States; and that I will be faithful and bear true allegiance to the State of Maryland, and support the Constitution and Laws thereof; and that I will, to the best of my skill and judgment, diligently and faithfully without partiality or prejudice execute the office of

Notary Public of

The State of Maryland

In and For

Montgomery County

according to the Constitution and Laws of this State.

I, Roy R. Torcaso, do declare that I believe in the existence of God.

........................

Sworn to and subscribed before me, Clerk of the Circuit Court for Montgomery County, at Rockville, Maryland, this ...... day of ............. AD, 19.....

TEST:

............. Clerk"

The appellant stated that he was prepared to take the oath or affirmation prescribed by the Maryland Constitution, but refused to declare his belief in the existence of God.

The oath and declaration quoted above differs from that prescribed by Art. 1, sec. 6 of the Maryland Constitution, for all persons elected or appointed to "any office of profit or trust, under this Constitution, or under the Laws, made pursuant thereto," in two particulars. The prescribed oath, or affirmation, begins with the phrase "I, ................, do swear, (or affirm, as the case may be,)", and it omits the separate declaration as to belief in the existence of God. It

54

is conceded that the office of notary public is an office of profit or trust, referred to in Art. IV, sec. 45 of the Constitution, and dealt with in Code (1957), Art. 68, secs. 1-10. Sec. 1 provides that applicants shall "take the oath of office before the clerk of the circuit court for each of the counties in the State * * *." The reference here, as in Code (1957), Art. 70, sec. 7, is to the oath prescribed by the Constitution. Art. 37 of the Declaration of Rights provides:

"That no religious test ought ever to be required as a qualification for any office of profit or trust in this State, other than a declaration of belief in the existence of God; nor shall the Legislature prescribe any other oath of office than the oath prescribed by this Constitution."

In *Davidson v. Brice,* 91 Md. 681 (1900), this Court held that the Legislature had no power to require a different or supplemental oath of office, in the case of a county treasurer. Chief Judge McSherry, for the Court, said (p. 691): "Art. 37 does two things. It prohibits any religious test as a qualification for any office of profit and trust, other than a declaration of belief in the existence of God; and it prohibits any oath of office other than the one set forth in sec. 6, Art. 1, except as respects the Comptroller and Treasurer." But the opinion throws no light on the questions now raised. We may note in passing that the form of oath presented to the applicant, which did not follow the language of the Constitution giving him an option to swear or affirm, was improper. But the appellant's main contentions are (1) that a declaration of belief in the existence of God, although permitted by Article 37 as an exception to the general rule against the requiring of a religious test as a qualification for office, has never been put into effect by the Legislature, and (2) that, if the exception is self-executing under Article 37 of the Declaration of Rights, it is invalid as in violation of the Fourteenth Amendment to the Federal Constitution.

On the first point, we must agree that there is no present Maryland statute implementing the exception stated in Article 37. Code (1957), Art. 70, sec. 9, provides: "It shall only

be necessary for an officer who is required to take and subscribe the oath prescribed by the sixth section of the first article of the Constitution to declare orally at the time his belief in the Christian religion, or, if he profess to be a Jew, of his belief in a future state of rewards and punishments; and it shall be presumed that an officer who has taken and subscribed the oath made at the same time such declaration of belief." This section was enacted by Chapter 18, sec. 1, Acts of 1854, and has been included without change in succeeding codifications, including those of 1860 and 1888, which, unlike other codifications, were not merely evidence of existing laws but legislative enactments of the matter therein contained. However, the section in question obviously referred to the religious tests set forth in the Constitution of 1851, which were deleted in the Constitution of 1867. The section makes no reference to belief in the existence of God, which is the only religious test now permitted. To the extent that sec. 9 refers to tests now forbidden, it can have no application in the instant case.

We think, however, that sec. 9 is significant for another reason. Its obvious purpose was to permit an oral declaration, and to raise a presumption of compliance with the constitutional requirements of belief in effect at the time of its enactment. In short, it assumed those requirements to be mandatory and self-executing, and merely undertook to prescribe the mode of compliance or the quantum of proof. Moreover, the language of all the constitutional provisions in effect prior to 1867 seemed to differentiate between the oath and the declaration. In the Declaration of Rights adopted in 1776, Art. 35 read: "That no other test or qualification ought to be required, on admission to any office of trust or profit, than such oath of support and fidelity to this State, and such oath of office, as shall be directed by this Convention, or the Legislature of this State, and a declaration of a belief in the Christian religion." Clearly, the Legislature was empowered to prescribe additional oaths of office, but there is no suggestion that the Legislature could dispense with the oath of support and fidelity, or the declaration of belief. Art. 34 of the Declaration of Rights of 1851 added a clause after the words

"Christian religion" stating: "and if the party shall profess to be a Jew, the declaration shall be of his belief in a future state of rewards and punishments." Art. 37 of the Declaration of Rights of 1864 substituted a clause after the words "Christian religion," stating: "or in the existence of God, and in a future state of rewards and punishments", omitting the specific reference to Jews.

In the proceedings of the Convention of 1867, Article 37 of the Declaration of Rights was reported from the committee in the exact language of Art. 37 of the Declaration of Rights of 1864. Mr. Brown advocated striking out of the constitution "any religious qualification whatever." Mr. Bernard Carter then submitted a substitute that was adopted: "That no religious test ought ever to be required as a qualification for any office of profit or trust in this State; nor shall the Legislature prescribe any other oath of office than the oath prescribed by this constitution." This was amended, on motion of Mr. Mackubin by adding after the word "State": "other than a [declaration of] belief in the existence of God." See Perlman, *Debates,* pp. 81, 173. In the context, and in the light of the historical development, we think the Convention was itself declaring that belief in the existence of God should be a qualification for office, but that no other religious test should be required.

We do not agree with the appellant that the word "ought" was used in a permissive sense. The word occurs repeatedly in the Declaration of Rights, in many instances to establish fundamental rights. It is a general rule that constitutional provisions are not given a directory construction. See *Archer v. State,* 74 Md. 443, 448. In *State v. C. & P. R. R. Co.,* 40 Md. 22, 50, Judge Alvey, with reference to the language of Art. 15, that every person "ought to contribute his proportion of public taxes * * * according to his actual worth * * *", said: "* * * this declaration of the right of the citizen is not simply directory to the Legislature, * * * it is a positive limitation or restriction on the power * * *." It could hardly be contended, in the instant case, that Article 37 would permit the Legislature to impose religious tests other than belief in God. The real question is whether the one permitted test re-

quired further legislative action. We entertain no doubt on that score. The provision is complete in itself and needs no legislative enactment to carry it into effect or provide means for its enforcement. Cf. *Leser v. Lowenstein*, 129 Md. 244, 252. See also 11 Am. Jur., *Constitutional Law*, § 75.

We also attach significance to the fact that there appears to be a long and unbroken administrative construction, whereby a declaration of belief in God has been required as a qualification for office in Maryland. Unfortunately, the record does not disclose the contemporaneous practice in 1867. But the practice was clearly recognized by Attorney General Armstrong in 1922, when he ruled that it was necessary that every official should be "required in some definite way" to declare his belief in the existence of God. 7 Op. Atty. Gen. 486.

We come, then, to the question whether the declaration in question violates the Federal Constitution. It is well settled that the provisions of the Federal Constitution are supreme, even over a provision of the State Constitution. *Baltimore Radio Show, Inc. v. State*, 193 Md. 300, 323. The appellant does not contend that clause three of Art. VI of the Federal Constitution is applicable to the states. That clause, providing that "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States," is plainly inapplicable. Nor is it contended that this clause could be imported into the Fourteenth Amendment. Obviously, Congress could not prescribe qualifications for state office, at least not so long as we retain a Federal form of government. However, it is well settled that the First Amendment, providing that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, * * *", is applicable to the states through the Fourteenth Amendment, as a deprivation of "life, liberty, or property, without due process of law", or a denial of "the equal protection of the laws." *Hopkins v. State*, 193 Md. 489, 496; *Hanauer v. Elkins, Pres., U. of Md.*, 217 Md. 213, 219. The appellant contends, in effect, that the State Constitutional qualification deprives him of his "liberty" to disbelieve in God, and discriminates against him as a non-believer.

We are referred to no case directly in point. In general, the cases distinguish between a right to believe, and a right to act on one's belief. *Cantwell v. Connecticut,* 310 U. S. 296, 303; *Craig v. State,* 220 Md. 590, 599. The first is absolute, the second is not. The petitioner is not compelled to believe or disbelieve, under threat of punishment or other compulsion. True, unless he makes the declaration of belief he cannot hold public office in Maryland, but he is not compelled to hold office. The Fourteenth Amendment does not prevent the states from establishing qualifications for office, at least where the qualifications are not based on such an unreasonable and improper classification as to be discriminatory. Cf. *Snowden v. Hughes,* 321 U. S. 1, *Wieman v. Updegraff,* 344 U. S. 183, and *Slochower v. Board of Education of New York,* 350 U. S. 551. In the flag salute case, *West Virginia State Board of Education v. Barnette,* 319 U. S. 624, overruling *Minersville School Dist. v. Gobitis,* 310 U. S. 586, some stress was laid upon the fact that school attendance was compulsory, and criminal penalties were imposed for non-attendance. Stress was also laid upon the lack of any showing of substantial or apparent relation to the public welfare, in the requirement of a salute to the flag of the United States.

In the absence of any direct authority on the point, we find it difficult to believe that the Supreme Court will hold that a declaration of belief in the existence of God, required by Article 37 of our Declaration of Rights as a qualification for State office, is discriminatory and invalid. As Mr. Justice Douglas, speaking for a majority of the Court in *Zorach v. Clauson,* 343 U. S. 306, 313, said: "We are a religious people whose institutions presuppose a Supreme Being." The problem here is more basic than in any of the cases cited. An oath, predicated upon a belief in God, is a regular incident of judicial proceedings. There can be no doubt that at common law an atheist was incompetent as a witness. See Rapalje, *Witnesses,* § 11; 3 Wharton, *Criminal Evidence* (12th ed.), § 750; 6 Wigmore, *Evidence* (3d ed.), §§ 1816-1828. See also *Atwood v. Welton,* 7 Conn. 66 (1828); *Thurston v. Whitney,* 2 Cush. (Mass.) 104 (1848); *United States v. Miller,* 236 Fed. 798 (D. C., Wash.). There has been no

constitutional or statutory abrogation of the common law rule in this State.

Article 39 of our Declaration of Rights provides: "That the manner of administering an oath or affirmation to any person, ought to be such as those of the religious persuasion, profession, or denomination, of which he is a member, generally esteem the most effectual confirmation by the attestation of the Divine Being." Article 21 provides that in all criminal prosecutions an accused shall have a right "to examine the witnesses for and against him on oath". It might well be contended that a person convicted upon unsworn testimony, or the testimony of an atheist, would be deprived of due process, or trial according to the "law of the land." Article 36 provides that "as it is the duty of every man to worship God in such manner as he thinks most acceptable to Him, all persons are equally entitled to protection in their religious liberty; * * * nor shall any person, otherwise competent, be deemed incompetent as a witness, or juror, on account of his religious belief; provided, he believes in the existence of God, and that under His dispensation such person will be held morally accountable for his acts, and be rewarded or punished therefor either in this world or in the world to come." To the members of the Convention, as to the voters who adopted our Constitution, belief in God was equated with a belief in moral accountability and the sanctity of an oath. We may assume that there may be permissible differences in the individual's conception of God. But it seems clear that under our Constitution disbelief in a Supreme Being, and the denial of any moral accountability for conduct, not only renders a person incompetent to hold public office, but to give testimony, or serve as a juror. The historical record makes it clear that religious toleration, in which this State has taken pride, was never thought to encompass the ungodly.

The Federal Constitution itself is not lacking in references to an oath, or affirmation, as a qualification for office. See Art. I, sec. 3; Art. II, sec. 1; Art. VI, and Amendment IV. See also 5 U. S. C. A., § 16. It would appear to be somewhat paradoxical if a Notary Public, who is given the power to administer oaths and certify thereto, under Code (1957),

Art. 68, sec. 3 (see also Maryland Rule 5 c, and Code (1957), Art. 1, secs. 10, 11), might qualify for the office even if he disavowed belief in God and in the sanctity of the very oaths he administers. If it be assumed, as has been suggested, that the real deterrent to false swearing, in our time, is not the belief in God but the fear of prosecution for perjury, we cannot say that the distinction between believers and non-believers is so patently inappropriate as a security for good conduct, as to make it invidious under the Fourteenth Amendment.

*Order affirmed, with costs.*

BRUNE, C. J., concurs in the result.