**Karl HEISER, Plaintiff,**

**v.**

**James A. RHODES, individually and as Governor of the State of Ohio, et al., Defendants.**

**Civ. No. 7259.**

United States District Court
S. D. Ohio, W. D.

Oct. 27, 1969.

Arnold Morelli, Bauer & Morelli, Cincinnati, Ohio, for plaintiff.

Julius J. Nemeth, Asst. Atty. Gen., Columbus, Ohio, Arthur M. Ney, Asst. Hamilton County Prosecutor, Cincinnati, Ohio, for defendants.

OPINION AND ORDER

Before WEICK, Circuit Judge, and PORTER and HOGAN, District Judges.

HOGAN, District Judge.

On September 18, 1969, the defendants, who include the election officials of the State of Ohio, rejected the candidacy of the plaintiff for the office of member of the State Board of Education from the First Ohio District on the ground that he was not a qualified voter residing in the territory comprising the First District.

This action was promptly filed by the plaintiff in two capacities, the one being as a qualified elector of the State and the other being as a potential candidate. The relief sought by the plaintiff includes the following:

a) The declaration that Ohio Revised Code § 3301.011 (the Ohio apportion-

ment statute applicable to the State School Board) is invalid under the 663 (1962); and *Wesberry v. Sanders*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d principles set forth in *Baker v. Carr*, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); and *Lucas v. Rhodes*, 389 U.S. 212, 88 S.Ct. 416, 19 L.Ed.2d 423 (1967).

b) An injunction prohibiting the defendants from "allowing a vote upon the office of the State Board of Education" until the district lines are drawn to satisfy the principles in the above cases.

c) An alternative order (based on the contention of the plaintiff that the present Congressional districting statute, Ohio Revised Code § 3521.01, as amended in 1968, applies to and covers School Districts) directing that the election, insofar as State Board of Education members be concerned, be held in eight districts for eight members, with the district lines corresponding to the present Congressional district lines.

d) Finally, for an order directing the defendants to place the name of the plaintiff on the ballot as a candidate for the office of State Board of Education from the First District, the lines of the First District being those set forth in the Congressional redistricting of 1968.

In 1967 the Ohio Legislature divided the State into 24 different districts for Congressional purposes. In each was to be elected one member of Congress in the 1968 general election. At the same time the State was divided into 24 districts for several other purposes; one was the election periodically from each of such districts of two delegates to the national convention of each of the major political parties; another was for the purpose of electing periodically from each of those 24 districts of a committeeman and a committeewoman to serve on the State Central Committees of each of the two major political parties; another was for the election in 1967 of 24 members of the Ohio State Board of Education, one from each of the 24 districts. The Congressional districting statute of the Ohio Legislature of 1967, then O.R.C. § 3521.01, was read into or adopted by reference in the statutes pertaining to these other offices. For example, the one dealing with the State Board of Education, § 3301.01, provided that the boundaries of the 24 districts and the counties composing each district "shall coincide with the boundaries and counties comprising each of the 24 Congressional districts as such latter districts were in lawful existence on March 1, 1967, under § 3521.01 of the Revised Code. One member of the State Board of Education shall be elected from each of the 24 districts created in this section." Whereas, a congressman is elected from each district every two years, as are all state central committeemen and committeewomen, and whereas, elections are held every four years for all delegates to the national conventions, that is not so in respect of the State Board of Education. The term of each member is six years. However, the original 24 elected in 1967 drew lots to determine which 8 of them would serve for two years, which 8 for four, and which 8 for six; the coming election in Ohio therefore involves eight districts and eight offices, each of the offices being for a six-year term. (O.R.C. § 3301.021)

The plaintiff resides on East Sharon Road in Glendale, Hamilton County, Ohio. That territory was included in the First Ohio Congressional District in the Ohio apportionment statute of 1967 and was literally included, therefore, (we say "literally" to avoid entanglement with that part of the Ohio statute reading "lawfully") within the First Ohio District for State Board of Education purposes.

In 1967 the Ohio Congressional apportionment statute of 1967 was attacked in the Northern District of Ohio as unconstitutional under *Wesberry v. Sanders,* supra. In the same case, attack was made on those two Ohio statutes which "adopted" the Congressional

districting statute for boundary and apportionment purposes, i. e., State central committee members and delegates to national conventions. The board of education boundary and apportionment statute, incorporating the same Congressional statute by reference, was not attacked in the Northern District case. In December, 1967, the Supreme Court of the United States held the basic statute and the two "adopters" unconstitutional under *Wesberry*. Thereafter, the United States District Court for the Northern District of Ohio enjoined the holding of elections in Ohio for congressmen and the two types of party nominees until Ohio was redistricted for those purposes in accordance with the "one-man one-vote" principle. In 1968, the Ohio Legislature adopted a new Congressional districting and apportionment statute—§ 3521.01. The Northern District Court approved that reapportionment and future elections for such offices.

For the purposes of Congressional elections, the plaintiff's residence "60 East Sharon Road" left the Second Ohio Congressional District and was transited into the First Ohio Congressional District. As a matter of fact, plaintiff filed for and ran for Congress from the First Ohio Congressional District in the general elections in 1968. In the summer of 1969 he filed as a candidate for the State Board of Education from the First District. The Ohio statute requires a candidate for the State Board of Education to be a "qualified elector residing in the territory comprising the district from which he is elected." The Ohio election officials, the defendants (omitting the defendant Governor, who has been voluntarily dismissed from this case) rejected the plaintiff's candidacy on the ground that he resided in the "Second Congressional District" as it "lawfully" existed (?—it obviously did not) in 1967. It is conceded that the plaintiff is otherwise fully qualified as a candidate and the sole ground of the rejection was nonresidence.

We pass the tempting question of whether Ohio, in 1967 or thereafter, has ever defined any district boundaries for the election of State School Board members. It defined them as coinciding with the boundaries of Congressional districts as they were "lawfully in existence on March 1, 1967," and as the Supreme Court rather succinctly pointed out in one sentence, "The districts as defined in Ohio in 1967 were unlawful."

Be that as it may, this much is certain—if the one-man one-vote principles (taught in *Wesberry* and *Baker v. Carr*) apply to the Ohio State Board of Education, i. e., to the offices of the 24 members, § 3301.01 of the Revised Code of Ohio—the statute under which the 1969 election for School Board members is being held—is clearly unconstitutional. The boundaries of both the First and Second Ohio Congressional Districts substantially differed in the Congressional redistrictings of 1967 and 1968, and that it true of practically all of the other 22 Ohio districts.

The position of the defendant voting officials is that the Ohio State Board of Education is an "administrative," as distinguished from "legislative," body and that *Baker* and *Wesberry* apply only to legislative offices. The defendants rely on *Sailors v. Board of Education*, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967) and on the Court's own summary of *Sailors* at page 485 of *Avery v. Midland County*, 390 U.S. 474, 88 S.Ct. 1114 at page 1120, 20 L.Ed.2d 45 (1967): "The Court rested on the administrative nature of the area school board's functions * * *"

The plaintiff, on the other hand, contends that the "one-man, one-vote" principle applies to all elective offices (including offices which a state could concededly leave to the appointive process but which the state has chosen to leave to the electoral process) in which is reposed "the authority to make a substantive number of decisions that affect all citizens," or "the power to make a large number of decisions having a broad range of impact on all the citizens." See

*Avery v. Midland County*, supra, at pages 481 and 483, 88 S.Ct. at pages 1118 and 1119, and cf. *Gray v. Sanders,* 372 U.S. 368, 83 S.Ct. 801 (1963) and *Harper v. Virginia State Board of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169, 9 L.Ed.2d 821 (1966).

The legislative v. administrative controversy arising from *Baker* and *Wesberry* has been a troublesome one for lower Federal and the State courts. See, for examples, *Strickland v. Burns,* 256 F.Supp. 824 at 836 (M.D.Tenn., 1966); *Hyden v. Baker,* 286 F.Supp. 475 (M.D. Tenn., 1968) and *Hadley v. Junior College District,* 432 S.W.2d 328 (Mo., 1968). The majority and dissenting opinions in those cases pend upon and clearly present the legislative v. administrative issue. The *Hadley* case involves a Missouri Junior College Board, the powers of which are quite similar to the powers of the Ohio State Board of Education (the Ohio Board's powers are set forth in Ohio Revised Code § 3301.-07). Probable jurisdiction has been noted in *Hadley* (393 U.S. 1115, 89 S.Ct. 991, 22 L.Ed.2d 120).

During the hearing of this case, counsel generally agreed that the determination by the Supreme Court in *Hadley* would be dispositive of that issue in this case.

■ We turn first to that part of the plaintiff's claim resting on his asserted candidacy and seeking an order directing defendants to place his name on the ballot. Even a conclusion in plaintiff's favor on the claim he asserts as a voter (representing a class) (i. e., of applicability of "one-man, one-vote" and malapportionment) would not lead to such an order for several reasons:

First—this Court in so doing would usurp the initial authority of the Ohio Legislature to, in the first instance at least, attempt to define the boundaries of the "well apportioned" districts. While we are aware that the Ohio Legislature has for many years (since 1955) evinced repeatedly an intent to coincide the Ohio State School Board District boundaries with existing "lawful" Congressional districts, nonetheless that is a matter for the Legislature to determine in the first instance. Stated otherwise, the judicial function upon a declaration of malapportionment has consistently been defined as (a) enjoining elections until a correct apportionment has been initially determined, or at least attempted, by the legislative body involved, and (b) apportionment only after legislative action has failed.

■ Secondly—it has consistently been held that, while a voter in a given case may have a right to require a "one-man, one-vote" principle election, nonetheless a particular individual may not successfully assert any federally protected right to be a candidate for a state political office. See *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). The right to become a candidate for state office is a right or privilege of state citizenship and not a federally guaranteed one. *Bacon v. Holzman,* 264 F.Supp. 120 (E.D.Ill., 1967). This is not a case involving a Federal office as was *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

It is therefore determined to deny, in any event, the plaintiff's prayer as a candidate that an order issue placing his name on the November ballot.

Returning to the plaintiff's voter (class) claim, these further factors are of import:

First—there can be no serious question of the malapportionment of Ohio's 24 State School Board Districts under *Baker & Wesberry. Lucas v. Rhodes* settled that as of 1968 and the defendants in this case make no contention of 1969 population shifts or changes. A determination of "Baker applicability" would, but for the equitable considerations hereinafter referred to, require the issue by this Court of an interlocutory order similar to that issued by the District Court for the Northern District of Ohio on January 4, 1968, following its receipt of the mandate of the Supreme Court in *Lucas v. Rhodes* (enjoining

future school board elections, retaining jurisdiction, staying further consideration until a future date certain pending State action in lieu of which, in approvable form, further judicial action would be forthcoming).

Second—on the one hand, all the preliminary expense related to the Ohio General Election of November 4, 1969, has been taken and the actual cost of the election will not vary materially whether or not the election includes the election of candidates for the eight school board district offices. On the other hand, should the 1969 School Board election be enjoined by this Court and that action prove erroneous (e. g., should *Hadley* be affirmed) Ohio would be put to the necessity of holding a special election for those offices in the eight districts. The cost of such, statewide, would be approximately two and one-half million dollars; presumptively the cost in the eight districts would be one-third, or in excess of eight hundred thousand dollars (there is further evidence in this case that the cost of a single-office, short-ballot, special election of the precincts in one of the three counties in which are located precincts aggregating the First District, would approximate $75,000.00).

Third—the 1970 Census will undoubtedly lead to further Ohio apportionment problems in connection with all offices to which *Baker* and *Wesberry* apply.

Fourth—if *Baker* and *Wesberry* apply, this case would present some singular problems to the Ohio Legislature as well as to this Court, posed by these factors:

a) The terms of the present 24 board members do not expire at one time. Eight each expire at the end of 1969, at the end of 1971 and at the end of 1973, and the terms of the present members continue until their successors are "elected and qualified." (O.R.C. § 3301.021)

b) A member creates a vacancy if he "removes from the district of his election." (O.R.C. § 3301.06) The statute is silent on the result of the "district" moving by reapportionment from the "residence" of the member.

c) The statutory term, as stated, of the eight offices to be filled in the coming election is "6 years" and the causes for "removal from office" are not clarified by statute. (O.R.C. § 3301.06)

Fifth—Ohio's election machinery was substantially in progress at the time this case was filed and the impending election is imminent.

In *WMCA, Inc. v. Lomenzo*, 377 U.S. 633, at 654, 84 S.Ct. 1418, at 1429, 12 L.Ed.2d 568 (June 15, 1964) the Court said:

"We find it inappropriate to discuss questions relating to remedies at the present time. * * * Since all members of both houses * * * will be elected in November 1964, the court below, acting under equitable principles, must now determine whether, because of the imminence of that election and in order to give the New York Legislature an opportunity to fashion a constitutionally valid legislative apportionment plan, it would be desirable to permit the 1964 election of legislators to be conducted pursuant to the existing provisions, or whether under the circumstances the effectuation of appellants' right to a properly weighted voice in the election of state legislators should not be delayed beyond the 1964 election."

On the same day the Court said in *Reynolds v. Sims*, 377 U.S. 533, at page 585, 84 S.Ct. 1362, at page 1393, 12 L.Ed. 2d 506:

"However, under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid. In awarding or withholding immediate relief, a court is entitled to and should

consider the proximity of a forth-coming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of. the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree."

Even assuming that *Baker v. Carr* applied to this case, it would, in the view of this Court, be inappropriate at this late date to fashion any remedy which would affect the November 4 election. The equities dictate otherwise. Futhermore, the equities require the extension of a reasonable opportunity to the Ohio Legislature to deal with the problem as it will exist if, as and when *Hadley* should be reversed.

It is, therefore, ordered that the complaint of the plaintiff be and it hereby is dismissed in its entirety at the plaintiff's cost.