**Margaret Elizabeth TAGGART**

v.

**The Honorable Marvin MANDEL, Governor of the State of Maryland, and the Honorable Fred Wineland, Secretary of State.**

**Civ. A. No. N–73–738.**

United States District Court,
D. Maryland.

March 27, 1975.

Harold Buchman and Harry A. E. Taylor, Baltimore, Md., for plaintiff.

Francis B. Burch, Atty. Gen. of Maryland, Fred Oken, Asst. Atty. Gen. of Md., Chief, Civ. Div., and David H. Feldman, Asst. Atty. Gen., of Md., Baltimore, Md., for defendant.

Before WINTER, Circuit Judge, NORTHROP, Chief District Judge, and WATKINS, District Judge.

NORTHROP, Chief District Judge.

Plaintiff, Margaret Elizabeth Taggart, a legal permanent resident alien, instituted this action seeking a declaratory judgment that Md.Ann.Code art. 68, § 1(b) (1970) is unconstitutional under the equal protection clause of the fourteenth amendment insofar as it requires applicants for appointment to the State constitutional office of Notary Public to be citizens of the United States.[1] She has further requested that this Court permanently enjoin defendants from further enforcing that statutory requirement. The defendants are the Governor of the State of Maryland, who has, among the other powers of his office, the power to appoint and remove notaries public, Md.Ann.Code art. 68, §§ 1(a) and 2, and the Secretary of the State of Maryland, who is responsible for the preparation of application forms for appointment as a notary public, and who is the person with whom such applications are filed and is responsible for giving the applicant notice

---

[1]. Md.Ann.Code art. 68, § 1(b) (1970) provides as follows:

    (b) *Qualifications.*—Every person appointed shall be at least eighteen (18) years of age, of good moral character and integrity, *a citizen of the United States*, a resident in this State for a period of two (2) years prior to appointment, and a resident of the senatorial district and subdistrict from which he or she is appointed. The residence requirements shall not apply to persons having an appointment as an official court reporter by any court of any county or Baltimore City. [Emphasis added.]

    In her Complaint in this action, plaintiff also challenged the constitutionality of the two-year residency requirement contained in section 1(b). However, she was subsequently appointed an official court reporter for the Supreme Bench of Baltimore City and thus is now exempt from that requirement. *See* Md.Ann.Code art. 68, § 1(b), *supra.* That challenge, therefore, has been withdrawn.

of any action taken thereon. Md.Ann. Code art. 68, § 1(c) and (g).[2]

Plaintiff's action is alleged to arise under the first, fifth and fourteenth amendments of the Constitution and under 42 U.S.C. §§ 1981 and 1983. This Court has jurisdiction under 28 U.S.C. § 1343(3) and (4), and it has the power to issue the requested declaratory judgment under 28 U.S.C. §§ 2201 and 2202. Upon a finding by the single District Court Judge to whom this case was originally assigned that the constitutional question presented was not insubstantial, a three-judge District Court was convened pursuant to 28 U.S.C. § 2281, and a hearing held. Inasmuch as there are no disputed facts, the case is now before this Court for its decision on the parties' cross-motions for summary judgment. *See* Fed.R.Civ.P. 56.

## THE FACTS

Section 45 of Article IV of the Maryland Constitution provides for the appointment of notaries public "in the manner, for the purpose, and with the powers" prescribed by law. That section is implemented by the provisions of Md.Ann.Code art. 68 (1970), entitled "Notaries Public." Pursuant thereto, notaries public in Maryland are empowered to administer oaths in all matters of a civil nature and to certify that fact under a notarial seal as sufficient evidence of having administered such oath, Md.Ann.Code art. 68, § 3 (Cum. Supp.1974), to receive proof or acknowledgment of all instruments of writing relating to commerce or navigation and such other writings as have been usually proved and acknowledged before notaries public, and to make protests and declarations respecting negotiable instruments and testify the truth thereof under seal concerning all matters done by virtue of his office. Md.Ann.Code art. 68, § 4 (1970). In Moser v. Howard County

Board, 235 Md. 279, 201 A.2d 365 (1964), the Maryland Court of Appeals held that the office of notary public in Maryland was a public office for profit, and while noting that the duties of the office were more limited in common law countries than in civil law countries, the Court nonetheless stated that they were "important and essential." *Id.,* 235 Md. at 282, 201 A.2d at 367.

Notaries public in Maryland are appointed by the Governor upon application endorsed by the State Senator representing the district in which the applicant resides. Md.Ann.Code art. 68, § 1 (a). Such appointments are generally for a term of four years and they may be renewed from term to term. Md. Ann.Code art. 68 § 1(d) and (e). In order to qualify for appointment each applicant must be at least eighteen years of age, of good moral character and integrity, *a citizen of the United States,* a resident of Maryland for a period of two years prior to appointment, and a resident of the senatorial district and subdistrict from which he or she is appointed. Md.Ann.Code art. 68 § 1(b). The citizenship requirement contained in § 1(b) was first adopted in 1801, *see* An Act Respecting Public Notaries in this State, Md.Laws ch. 86, § 2 (1801), and has been carried down to the present date. *See, e.g.,* Md.Ann.Code art. 68, § 1(Flack ed. 1939); Md.Ann.Code art. 68, § 1 (Bagby ed. 1924); Md.Code art. 68, § 1 (Poe ed. 1888); Md.Code art. 67, § 1 (1860).

Miss Taggart is a 24-year old native of Ireland. She first arrived in this country on June 25, 1971, and is a legal permanent resident alien, holding Alien Registration No. A30–755–397. She has been a resident of the State of Maryland and of the City of Baltimore since March, 1973, and on July 16, 1973, she filed her intention to become a citizen of the United States.[3]

---

2. The Secretary of State is also empowered to establish certain fees in connection with applications for appointment as a notary public and he has the responsibility to forward the initial commission, and any subsequent notices

of renewal thereof, to each successful applicant. Md.Ann.Code art. 68, § 1(e) and (f).

3. *See* 8 U.S.C. § 1445(f).

Upon first arriving in this country in 1971, Miss Taggart proceeded to St. Cloud, Minnesota, where she enrolled at the St. Cloud Business College. After her graduation from that institution as a stenotypist in March, 1973, Miss Taggart moved to Baltimore, Maryland, where she was employed by the Accelerated Reporting Service. On September 20, 1973, she was appointed an official court reporter with the Supreme Bench of Baltimore City, and she has held that position up to the present time.

An important aspect of Miss Taggart's work, first as a stenotypist with the Accelerated Reporting Service and subsequently as an official court reporter, is an ability to take sworn depositions. In order to undertake that task, however, it is necessary that she be able to notarize such depositions. In April, 1973, Miss Taggart therefore expressed her interest in becoming a notary public to State Senator Robert L. Dalton. The latter subsequently wrote a letter to the office of the Attorney General of Maryland setting forth Miss Taggart's position and inquiring if it was possible to make an exception to the citizenship and residency requirements of Md.Ann.Code art. 68, § 1(b). In a letter dated May 30, 1973, Henry R. Lord, Deputy Attorney General of Maryland, replied that a pending application for United States citizenship did not comply with the unambiguous mandate of § 1(b), and he suggested that a person disqualified from applying for a notary position because of a lack of United States citizenship might want to seek a judicial remedy in a suit testing whether the requirement violates the equal protection clause of the United States Constitution. Plaintiff subsequently initiated the instant action on July 23, 1973.

During the preliminary stages of this case, defendants took the position that there was no actual case or controversy present inasmuch as plaintiff had never formally filed an application for appointment as a notary public. This Court thereafter suspended any further proceedings pending the outcome on a formal application to be submitted by Miss Taggart. After some delays which are not relevant here, Miss Taggart's formal application, endorsed by Senator Dalton, was forwarded to the Secretary of State of Maryland on February 20, 1974. In response to a request for advice with respect to the completed application, the Office of the Attorney General of Maryland advised the Secretary of State by letter dated May 31, 1974, of its position that the citizenship requirement of § 1(b) was not violative of the equal protection clause of the fourteenth amendment. By a subsequent letter dated June 26, 1974, the defendant Secretary of State informed Miss Taggart of the defendant Governor's decision not to approve her application in view of the explicit citizenship requirement contained in § 1(b).

## DISCUSSION

In support of her position that the citizenship requirement of Md.Ann.Code art. 68, § 1(b) is violative of the equal protection clause of the fourteenth amendment, plaintiff cites the recent decisions by the Supreme Court in Sugarman v. Dougall, 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973) and In re Griffiths, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973). In those cases, the Supreme Court held respectively that a provision of New York's civil service law that only citizens could hold permanent positions in the competitive class of the state civil service and that a Connecticut court rule restricting admission to the bar to citizens were violative of the equal protection clause. According to plaintiff, those decisions clearly established the principle that classifications based on alienage are inherently suspect and "subject to close judicial scrutiny." In re Griffiths, *supra*, 413 U.S. at 721–22, 93 S.Ct. at 2854–55, 37 L.Ed.2d at 914–915; *Sugarman, supra*, 413 U.S. at 642, 93 S.Ct. at 2847, 37 L.Ed.2d at 859. *See also* Graham v. Richardson, 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534, 541 (1971). Thus, in order to justify its use of a suspect classification in the instant case she contends that the State must show "that

its purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is 'necessary . . . to the accomplishment' of its purpose or the safeguarding of its interest." In re Griffiths, *supra,* 413 U.S. at 721–22, 93 S.Ct. at 2855, 37 L.Ed.2d at 915. She submits that the various grounds raised by defendants in support of the instant classification cannot withstand the requisite scrutiny.

Defendants, however, contend that the decisions cited by plaintiff are inapposite as they dealt solely with the constitutionality of broad state restrictions relating to welfare and employment of aliens. In contrast, they point out that in the instant case we are dealing primarily with the scope of the plenary power of the State of Maryland under the tenth amendment to the United States Constitution to prescribe the qualifications for a State constitutional public office and "to preserve [its] basic conception of a political community." *Sugarman, supra,* 413 U.S. at 647, 93 S.Ct. at 2850, 37 L.Ed.2d at 863, citing Dunn v. Blumstein, 405 U.S. 330, 344, 92 S.Ct. 995, 1004, 31 L.Ed.2d 274, 285 (1972).

It is their position that in such a situation equal protection analysis is wholly inapplicable. Instead, they contend that this Court should consider such factors as the unique legal status of aliens, the explicit constitutional preferences for citizens, the distinctive responsibilities of the office of notary public, the long history of the challenged limitation, and the apparently near universal similar practice of other states.

In this regard, defendants note that in *Sugarman, supra,* the Supreme Court expressly stated that it was not holding in that case "that a State may not, in an appropriately defined class of positions, require citizenship as a qualification for office." 413 U.S. at 647, 93 S.Ct. at 2850, 37 L.Ed.2d at 862. Moreover, they emphasize the fact that the Court reiterated its prior language from Boyd v. Thayer, 143 U.S. 135, 161, 12 S.Ct. 375, 382, 36 L.Ed. 103, 109 (1892), to the effect that "[e]ach State has the power to prescribe the qualifications of its officers and the manner in which they shall be chosen." *Sugarman, supra,* 413 U.S. at 647, 93 S.Ct. at 2850, 37 L.Ed.2d at 863.

From all of the above, defendants conclude that utilization of a classification based on alienage in the instant situation was well within the constitutional prerogatives of the State of Maryland, and that its long-standing legislative judgment in that regard should be accorded authoritative deference without reference to any equal protection principles which might otherwise apply.

In a somewhat related argument, defendants further contend that equal protection analysis should not be applied to the instant case inasmuch as eligibility for appointment to a State constitutional office should properly be considered a privilege of national citizenship. Thus, defendants note that the fourteenth amendment itself distinguishes between the special privileges or immunities of citizens and those rights pertaining to all "persons" within the jurisdiction of the United States. *See Sugarman, supra,* 413 U.S. at 652–53, 93 S.Ct. at 2862–63, 37 L.Ed.2d at 865–866 (Rehnquist, J., dissenting). According to defendants, the test as to whether a particular right is a privilege or immunity of national citizenship is whether it is one of those "which owe their existence to the Federal government, its national character, its Constitution, or its laws." *Slaughter-House Cases,* 16 Wall. 36, 79, 21 L.Ed. 394, 409 (1873). Since the power to prescribe qualifications for appointment to a State political office is reserved to the States under the tenth amendment, defendants conclude that the right to hold a state office is one "that reasonably can be said to appertain to that special relationship which exists between citizens and their national government." Defendants' Memorandum at 20.

A somewhat similar argument to those of defendants in the instant case was advanced in In re Griffiths, *supra,* in support of the proposition that aliens could lawfully be excluded from admission to the Connecticut bar. The Supreme Court was not forced to decide the issue in that

case, however, as it found that the appellees therein had failed to establish that a lawyer was an "office holder" in the traditional sense. *Id.*, 413 U.S. at 727–29 & n. 21, 93 S.Ct. at 2858 & n. 21, 37 L.Ed.2d at 918.

In the instant case it would appear that the Maryland constitutional office of notary public is a public office, *see* Moser v. Howard County Board, 235 Md. 279, 201 A.2d 365 (1964), and that a notary public in Maryland is an "office holder" in the traditional sense. However, this Court is not persuaded that that fact, either alone or when considered in conjunction with the specific responsibilities of the office and the lengthy history of the challenged limitation, is sufficient to exempt State qualifications with respect thereto from the purview of the equal protection clause—although it might provide a basis in an appropriate case for applying a less exacting standard of judicial scrutiny. *See Sugarman, supra*, 413 U.S. at 648, 93 S.Ct. at 2850, 37 L.Ed.2d at 862.

Thus, in Snowden v. Hughes, 321 U.S. 1, 6–7, 64 S.Ct. 397, 400, 88 L.Ed. 497, 501 (1944), the Supreme Court expressly held that the right to become a candidate for state office was a right or privilege of state citizenship, and not of national citizenship. *See also* Egan v. City of Aurora, Ill., 365 U.S. 514, 514–15, 81 S.Ct. 684, 685, 5 L.Ed.2d 741, 742 (1961) *(per curiam)*; Thomas v. Mims, 317 F.Supp. 179, 181 (S.D.Ala.1970); Heiser v. Rhodes, 305 F.Supp. 269, 272 (S.D.Ohio 1969); Bacon v. Holzman, 264 F.Supp. 120, 124 (N.D.Ill.1967), rev'd sub nom. Briscoe v. Kusper, 435 F.2d 1046 (7th Cir. 1970).

Moreover, while the Supreme Court has confirmed that a State has a broad latitude in prescribing the qualifications of its public office holders, as well as in regulating its own elections, *see Sugarman, supra*, 413 U.S. at 647, 93 S.Ct. at 2850, 37 L.Ed.2d at 862, it has never indicated that such power was wholly unfettered. Thus, in Turner v. Fouche, 396 U.S. 346, 362, 90 S.Ct. 532, 541, 24 L.Ed.2d 567, 580 (1970), the Supreme Court recognized the existence of a correlative "federal constitutional right to be considered for public service without the burden of invidiously discriminatory disqualifications." In that case, in overturning a Georgia statutory requirement that school board members be freeholders, the Court went on to state that:

> [t]he State may not deny to some the privilege of holding public office that it extends to others on the basis of distinctions that violate federal constitutional guarantees. [*Id.*, 396 U.S. at 362–63, 90 S.Ct. at 541, 24 L.Ed.2d at 580.]

Even in *Sugarman, supra,* itself, the Court noted that the State's exercise of its powers in prescribing the qualifications of its officers was "not wholly immune from scrutiny under the Equal Protection Clause." *Id.*, 413 U.S. at 648, 93 S.Ct. at 2850, 37 L.Ed.2d at 863. Thus, it stated as follows:

> We recognize a State's interest in establishing its own form of government, and in limiting participation in that government to those who are within "the basic conception of a political community." Dunn v. Blumstein, 405 U.S. 330, 344, 92 S.Ct. 995, 1004, 31 L.Ed.2d 274 (1972). We recognize, too, the State's broad power to define its political community. But in seeking to achieve this substantial purpose, with discrimination against aliens, the means the State employs must be precisely drawn in light of the acknowledged purpose. [*Id.*, 413 U.S. at 642–43, 93 S.Ct. at 2848, 37 L.Ed.2d at 860.]

*See also* Bullock v. Carter, 405 U.S. 134, 140–41, 92 S.Ct. 849, 854–55, 31 L.Ed.2d 92, 97–98 (1972); Chimento v. Stark, 353 F.Supp. 1211, 1213 (D.N.H.), aff'd, 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973); Walker v. Yucht, 352 F.Supp. 85, 89 (D.Del.1972).

Thus, notwithstanding defendants' able arguments to the contrary, this Court holds that the State of Maryland's legislative determination to exclude aliens from the State constitutional office of notary public is not exempt

from judicial scrutiny under the equal protection clause. The only remaining question then is whether the standard of scrutiny to be applied is the strict standard for which plaintiff contends or the more traditional rational basis standard which defendants favor. In view of this Court's opinion that the instant limitation must fall even when considered in light of the more lenient rational basis standard, it does not feel that it is necessary to decide which standard would otherwise be the appropriate one to consider. Therefore, it will proceed to consider the challenged classification solely to determine whether it is based on grounds which are relevant to the achievement of a valid state objective. *See* Turner v. Fouche, *supra,* 396 U.S. at 362, 90 S.Ct. at 541, 24 L.Ed.2d at 579; McGowan v. Maryland, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed. 2d 393, 398 (1961).

■ Defendants submit that the instant classification is reasonable in that it imposes only a limited restriction [4] on an "important nonelective . . . judicial position." *See Sugarman, supra,* 413 U.S. at 647, 93 S.Ct. at 2850, 37 L. Ed.2d at 862. In this regard, they particularly emphasize the fact that a notary public is an impartial agent of the State, and that in the performance of his duties he exercises that portion of the State's sovereign power which is delegated to him. *See* Moser v. Howard County Board, *supra,* 235 Md. at 283, 201 A.2d at 367. Under such circumstances, and considering the important responsibilities of a notary public in administering oaths, defendants contend that it is important to limit holders of the office to persons owing allegiance to the United States. Furthermore, they contend that citizens, being more familiar with the language and customs of this country, would be better able to carry out the various functions of the office. Finally, defendants again sub-

mit that the long history of the instant qualification in Maryland, while not dispositive, is prima facie evidence of its reasonableness, especially when considered in conjunction with the nearly universal similar practice of the other states.

While this Court is aware that "[t]he presumption of reasonableness is with the State," Salsburg v. Maryland, 346 U.S. 545, 553 & n. 9, 74 S.Ct. 280, 284 & n. 9, 98 L.Ed. 281, 289 (1954); Wilson v. Moore, 346 F.Supp. 635, 640 (N.D. W.Va.1972); Thompson v. Whitley, 344 F.Supp. 480, 483–84 (E.D.N.C.1972), it is not persuaded that the position of notary public is one "where citizenship bears some rational relationship to the special demands of the particular position." *See* Dougall v. Sugarman, 339 F. Supp. 906, 911 (S.D.N.Y.1971) (Lumbard, J., concurring), aff'd, 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973). Thus, this Court notes that the various functions of a notary public are largely ministerial in nature, and it feels that they are qualitatively indistinguishable from those functions of an attorney to which the Supreme Court accorded such short shrift in In re Griffiths, *supra,* 413 U.S. at 724, 93 S.Ct. at 2856, 37 L. Ed.2d at 916:

> It in no way denigrates a lawyer's high responsibilities to observe that the powers "to sign writs and subpoenas, take recognizances, [and] administer oaths" hardly involve matters of state policy or acts of such unique responsibility as to entrust them only to citizens.

While it may be asserted that the above language was merely dicta, it can hardly be seriously argued that notaries public either "participate directly in the formulation, execution, or review of broad public policy," *Sugarman, supra,* 413 U. S. at 647, 93 S.Ct. at 2850, 37 L.Ed.2d at 863, or that they "perform functions that go to the heart of representative

---

4. In this regard, defendants contend that not only is the instant disqualification narrowly confined to a specific public office (compare the broad applicability of the restriction challenged in *Sugarman, supra*), but also that it is only temporary in nature since alienage

is not an immutable status. There is, however, no *de minimis* rule with respect to violations of constitutional rights, and unless the qualification is otherwise constitutional, the fact that it is not a permanent bar is irrelevant.

government." *Id.*; *compare* Perkins v. Smith, 370 F.Supp. 134 (D.Md.1974), appeal pending, No. 73–1915 (jury service).

In response to defendants' contention that aliens would be more likely to swear falsely than citizens would be, there is no evidence before this Court, nor would it accept any, that aliens as a class are inherently any less trustworthy than citizens. While it might be desirable for various reasons to have only persons owing allegiance to this country in oath-administering offices such as that of notary public, such an end can be adequately achieved by the requirement of an oath of office.[5] *See* Md.Const. art. I, § 6; Md.Ann.Code art. 70, § 7 (1970); *cf.* Torcaso v. Watkins, 223 Md. 49, 162 A.2d 438 (1960), rev'd on other grounds, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961). Moreover, with respect to detection of specific instances of false swearing, this Court notes that notaries are required to keep complete registers of all protests and other official acts, Md.Ann.Code art. 68, § 5, thus permitting a full review of their actions, and they are subject to removal from office for misconduct or other good cause, Md. Ann.Code art. 68, § 2.

In this regard, this Court further notes that there is apparently no comparable citizenship requirement for appointment to the State constitutional offices of coroner (post-mortem examiner), *see* Md.Ann.Code art. 22, §§ 1–9 (1973), or elisor, both of which are created in the same constitutional provision creating the office of notary public. Md. Const. art. IV, § 45. Similarly, there is apparently no citizenship requirement for appointment to other equally important nonelective judicial offices such as that of Deputy Clerk of Court, *see* Md. Const. art. IV, § 26, or official court reporter.

In light of the largely ministerial nature of the tasks of a notary public, this Court is similarly unpersuaded by the argument that citizens, being more familiar with the customs and language of this country, would be better able to carry out the duties of the office. *Compare* Perkins v. Smith, *supra*, 370 F.Supp. at 138. Moreover, to the extent that the State feels that familiarity with the language and customs of this country is a necessary qualification for the position of notary public, the equal protection clause demands that it choose some criteria of selection more narrowly confined to that end. In re Griffiths, *supra*, 413 U.S. at 725, 93 S.Ct. at 2856, 37 L.Ed.2d at 916. *See* Perkins v. Smith, *supra*, 370 F.Supp. at 140 (Winter, J., concurring).

Finally, this Court is unable to conclude that either the fact that the instant requirement is of a long-standing duration, or that most of the other states impose a similar limitation, has any significant bearing on the reasonableness of the requirement. Thus, this Court notes that prior to the Supreme Court's decision in In re Griffiths, *supra*, most states also excluded aliens from admission to the bar. Concepts of equal protection, like those of due process, are not static over time, and this Court is not bound by out-moded concepts which are no longer relevant to today's society.

In conclusion, and after full consideration of all the arguments advanced by defendants in support of the instant classification, this Court finds that Maryland's statutory requirement that applicants for the State constitutional office of notary public be citizens is wholly unrelated to the achievement of any valid State objective, and thus that it is in violation of the equal protection clause of the fourteenth amendment.

For the reasons set forth hereinabove, it is this 27th day of March, 1975, by the United States District Court for the District of Maryland, ordered as follows:

1. That the plaintiff's Motion for Summary Judgment BE, and the same hereby is, granted; and

2. That the defendants' Motion for Summary Judgment BE, and the same hereby is, denied.

---

5. *Cf.* In re Griffiths, *supra*, 413 U.S. at 725–26 & n. 18, 93 S.Ct. at 2857 & n. 18, 37 L.Ed.2d at 918.