## SCHOWGUROW *v.* STATE

[No. 368, September Term, 1964.]

122

*Decided October 11, 1965.*

The cause originally was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, SYBERT and OPPENHEIMER, JJ., and reargued before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY and OPPENHEIMER, JJ., and FOSTER and JONES, JJ., Associate Judges of the Eighth Judicial Circuit, both specially assigned.

*J. Grahame Walker* (on both arguments), with whom was *J. Gifford Scarborough* on the brief, for the appellant.

*Roger D. Redden, Assistant Attorney General* (on both arguments), with whom were *Thomas B. Finan, Attorney General,* and *Walter M. Baker, State's Attorney for Cecil County,* on the brief, for the appellee.

OPPENHEIMER, J., delivered the majority opinion of the Court. HORNEY, J., dissents. Dissenting opinion at page 137, *infra.*

In this appeal by a Buddhist from a conviction of murder, we are confronted with the question of whether the provision of Article 36 of the Maryland Declaration of Rights that no person shall be deemed incompetent as a juror on account of religious belief "provided he believes in the existence of God" has been rendered unconstitutional under the Fourteenth Amendment by the decisions of the Supreme Court of the United States.

I

In *Torcaso v. Watkins,* 223 Md. 49, 162 A. 2d 438 (1960), this Court held, in a unanimous decision, that a person appointed a notary public by the Governor, who declined to take

an oath of office because it required a declaration that he believed in the existence of God, was not deprived of any of his rights under the Federal Constitution. Judge Henderson, for the Court, found that the declaration of belief in the existence of God required by Article 37 of our Declaration of Rights as a qualification for State office was not discriminatory or invalid. He said "it seems clear that under our Constitution disbelief in a Supreme Being, and the denial of any moral accountability for conduct, not only renders a person incompetent to hold public office, but to give testimony, or serve as a juror." 223 Md. at 59. The Supreme Court of the United States, on appeal, reversed our decision. *Torcaso v. Watkins,* 367 U. S. 488 (1961). In an opinion expressing the views of seven members of the Court, Mr. Justice Black held that the Maryland constitutional requirement invaded the appointee's freedom of belief and religion and could not be enforced against him. The other two members of the Court, Justices Frankfurter and Harlan, concurred in the result.

This Court pointed out in its decision that the provisions of the Federal Constitution are supreme, even over a provision of the State Constitution, and that the First Amendment to the Federal Constitution is applicable to the states through the Fourteenth Amendment, as a deprivation of life, liberty, or property, without due process of law, or a denial of the equal protection of the laws. 223 Md. at 57, and cases therein cited. It was in the interpretation of the "establishment of religion" clause of the First Amendment as applied to *Torcaso* that the Supreme Court differed from this Court, and its decision, if applicable to the case here presented, under our system of government, is controlling.

The appellant is a Kalmuck of Mongolian descent. He was raised in the Buddhist faith and has continuously been and was at the time of his indictment and trial an adherent of that faith. In an affidavit duly filed, he stated the Buddhist religion, to which he adheres, does not teach a belief in the existence of God or a Supreme Being.[1] By timely motions, he challenged

---

1. In footnote 11 to Mr. Justice Black's opinion in Torcaso, it is stated that "Among religions which do not teach what would gen-

the compositions of the grand jury which indicted him and the petit jury which tried and convicted him. He contended below, and contends here, that because Article 36 of the Maryland Declaration of Rights requires jurors to express a belief in the existence of God, the juries were selected in violation of the First and Fourteenth Amendments of the Federal Constitution. The motions were denied.

The conclusion is inescapable that every member of the grand jury which indicted the appellant and of the petit jury which tried him was required, as part of his oath or affirmation, to declare a belief in God, as a condition to his taking office. Article 36 of the Maryland Declaration of Rights provides, *inter alia,* that no person otherwise competent shall be deemed incompetent as a juror on account of his religious belief, "provided he believes in the existence of God, and that under his dispensation such person will be held morally accountable for his acts, and be rewarded or punished therefor in this world or in the world to come." Article 37 provides that "no religious test ought ever to be required as a qualification for any office of profit or trust in this State, other than a declaration of belief in the existence of God; * * *" In our decision in *Torcaso,* Judge Henderson, for the Court, held that belief in the existence of God, without any other religious test, was a qualification for office, and that the provision of Article 37 is complete in itself and needs no legislative enactment to carry it into effect. 223 Md. at 56, 57. A grand or petit juror serves in an office of trust (apart from profit). In Maryland, both grand and petit jurors are an integral part of our judicial system; they are regarded as fundamental safeguards to individual liberty, and, in their deliberation, each member exercises a part of the sovereign power of government in the administration of justice. *In re Report of Grand Jury,* 152 Md. 616, 619-621, 137 Atl. 370 (1927) ; *Danner v. State,* 89 Md. 220, 225-27, 42

enerally be considered a belief in the existence of God are Buddhism, Taoism, Ethical Culture, Secular Humanism and others." 367 U. S. at 495. See also the discussion of the Buddhist belief in the opinion of Mr. Justice Clark in United States v. Seeger, 380 U. S. 163, 174-175 (1965) and in the concurring opinion of Mr. Justice Douglas, 380 U. S. 163, 190-192.

Atl. 965 (1899). In this Court's decision in *Torcaso,* as we have noted, it was said that under the Maryland Constitution, disbelief in a Supreme Being renders a person incompetent to serve as a juror.

Because of the requirement of the Maryland Constitution, it has been the duty of nisi prius judges to make belief in God a condition to service as a juror. There is a strong presumption that judges and court clerks, like other public officers, properly perform their duties. *Lewis v. United States,* 279 U. S. 63, 73 (1929) ; See *Fidelity & Casualty Co. v. Riley,* 168 Md. 430, 433, 178 Atl. 250 (1935) ; *Union Trust Co. v. State,* 116 Md. 368, 372, 81 Atl. 873 (1911). In denying the appellant's motion to dismiss the indictment, Judge Rollins concluded, at least for the purpose of the ruling, that the court may presume the members of the grand jury to have been in fact required, as a condition of service, to affirm a belief in the existence of God. In ruling adversely on the challenge to the petit jury and the motion that they be dismissed, Chief Judge Carter, on behalf of Judges Rollins and Keating and himself, presumed that the jurors were selected in accordance with the requirement of the Maryland Constitution that they believe in the existence of God. The court acted on that presumption.

Moreover, this Court takes judicial notice of the fact that it is and for many years has been a widespread practice in this State, not only for grand and petit jurors to be questioned as to their belief in God as part of their oath, but also for prospective jurors to be so questioned, orally or in written interrogations, before their names are placed on the jury lists, and that any person who does not state his belief in God is excluded. Absent an adjudication by this Court or the Supreme Court of the United States that this practice is unconstitutional, the judges, clerks and other court officials who so made belief in God a requisite to jury service were properly performing their duties under our Constitution and the decisions of this Court.

The State does not deny that the Supreme Court's decision in *Torcaso* renders unconstitutional the long established law of this State that expression of a belief in the existence of God

is a condition precedent to holding public office.[2] If, as was held by the Supreme Court in *Torcaso,* a notary public cannot constitutionally be required to demonstrate his belief in God as a condition to taking office, it follows inevitably that the requirement is invalid as to grand and petit jurors, whose responsibilities to the public and to the persons with whom they deal are far greater.

In a long line of cases, the Supreme Court has consistently held that a criminal defendant is denied the equal protection of the laws as guaranteed by the Fourteenth Amendment if he is indicted by a grand jury or tried by a petit jury from which members of his race have been excluded because of their race. *Eubanks v. Louisana,* 356 U. S. 584 (1958) and cases therein cited. See Annot., *Group or class discrimination in selection of grand or petit jury as prohibited by Federal Constitution—Supreme Court cases,* 2 L. ed.2d 2040 (1958). While most of the cases deal with the exclusion of Negroes, the rule has also been applied to the exclusion of persons of Mexican descent. *Hernandez v. Texas,* 347 U. S. 475 (1954). In that case, Mr. Chief Justice Warren, in delivering the opinion of all the Justices, said:

> "Throughout our history differences in race and color have defined easily identifiable groups which have at times required the aid of the courts in securing equal treatment under the laws. But community prejudices are not static, and from time to time other differences from the community norm may define other groups which need the same protection." 347 U. S. at 478.

In *Juarez v. State,* 102 Tex. Crim. 297, 277 S. W. 1091 (1925), the appellant, a Roman Catholic, who had been con-

---

2. Only seven other states, Arkansas, Mississippi, North Carolina, Pennsylvania, South Carolina, Tennessee and Texas, seem to have similar constitutional provisions. See note, 10 Buffalo L. Rev. 372 (1961). No case has been cited by counsel, and we have found none, in any of these jurisdictions in which the validity of the state constitutional provision has been questioned under the Fourteenth Amendment since the Supreme Court's decision in Torcaso.

victed of selling intoxicating liquor, appealed on the ground that the indictment upon which he was convicted had been returned by a grand jury from which all Catholics had been deliberately excluded as a result of design on the part of the jury commissioners. The appellant had filed a special plea in the lower court alleging that this deliberate exclusion violated the rights guaranteed to him under the Fourteenth Amendment. The lower court overruled the plea without investigation into the truth or falsity of its allegations and refused to hear testimony thereon. The Court of Criminal Appeals reversed the judgment of conviction. In its opinion, the court said:

> "If the Legislature of the State should pass a law saying that hereafter no man holding to the Baptist religious faith, or the Methodist religious faith, or to the Roman Catholic religious faith, should ever be permitted to serve on a grand jury in this State, and a party adhering to the religious faith so designated should claim that by such legislative act his rights under the 14th Amendment had been violated, the validity of such a law could never be sustained. This, as we understand it, is what appellant alleges in his plea, except that he avers the discrimination was designedly brought about through subordinate officers and agents of the State." 102 Tex. Crim. at 304.

We find the inevitable result of the Supreme Court's decision in *Torcaso* to be that the exclusion of persons from jury service because of their lack of belief in a Supreme Being is in violation of the Federal Constitution. We can see no difference, under the Federal Constitution, in the position of a defendant who is a member of a class excluded from the jury for lack of belief in God from that of a defendant tried by a jury from which members of his race have been excluded because of their race.

In delivering the opinion for the Court, in *Levitsky v. Levitsky,* 231 Md. 388, 397, 190 A. 2d 621 (1963), Chief Judge Brune said, in a dictum, that the opening clause of Article 36 "appears to be no longer tenable under *Torcaso v. Watkins,* 367 U. S. 488 (in which Art. 37 was involved) * * *."

In *Murray v. Burns,* 405 P. 2d 309 (Haw. 1965), Madalyn Murray and her son, William J. Murray, had filed a petition for a writ of habeas corpus in the Hawaii Circuit Court. The order required the delivery of the two petitioners to agents of the State of Maryland for return to this State in accordance with the rendition warrants issued by the Governor of Hawaii in response to a requisition of the Governor of Maryland, for extradition of Mrs. Murray and her son, to answer several criminal charges of assaulting police officers and interfering with the performance of their duties, pending against each under indictments returned by a grand jury in the City of Baltimore. The petitioners contended, *inter alia,* that the indictments upon which the requisitions were predicated were constitutionally invalid because persons holding the same theological views as petitioners are mandatorily excluded from jury service by Article 36 of the Maryland Declaration of Rights, and that subjecting petitioners to trial in Maryland would deprive them of the equal protection and due process of law guaranteed by the United States Constitution because persons holding the same theological views as petitioners are mandatorily excluded by Articles 36 and 37 of the Maryland Declaration of Rights from service as judge, juror or witness. The Supreme Court of Hawaii affirmed the order dismissing the petition. As to the questions involving the selection of the grand and petit juries, it held that the attack on the indictments was made collaterally in the court of a foreign jurisdiction in an attempt to resist extradition and that the issues must be left for resolution to the demanding state, Maryland. In its opinion on these points, however, the court said:

> "While the religious test stricken down by the Supreme Court in Torcaso v. Watkins pertained to qualification under Article 37 of the Declaration of Rights for public office in Maryland, it is obvious that the reasoning underlying the opinion and the explicit language contained in it apply equally as well to nullify the proviso of Article 36 disqualifying atheists from jury service." 405 P. 2d at 322.

The Hawaiian court was unwilling to entertain any imputation

that the Maryland courts would disregard the ruling of the Supreme Court but held that, in any case, the claim could not be considered in extradition proceedings.

The State points out that in the Supreme Court cases which held there had been an unconstitutional denial of the defendant's right because of exclusion from the jury of members of his race, there was testimony making out a prima facie case of a substantial number of the excluded class in the community. In those cases, however, the question was whether, under a law nondiscriminatory on its face, through administration or practice, there had been exclusion as a matter of fact. Here, there has been systematic exclusion for over a century by the mandate of the Maryland Constitution.

The class excluded by our Constitution is not limited to Buddhists.[3] It includes not only the various religious groups set forth in *Torcaso, supra,* 367 U. S. at 495, whose members do not believe in God, but also all atheists and agnostics.

There is no reliable estimate of the number of persons in this class, taken as a whole. However, the Maryland Declaration of Rights in the 1867 Constitution, and its predecessors, evidence the conviction of the framers that there were non-believers in our State in sufficient numbers to make the provisions as to belief in God a qualification for office necessary. Early decisions of this Court reflect the existence of non-believers in cases involving the suspected presence of a member of that group on a grand or petit jury. *The .State v. Mercer,* 101 Md. 535, 61 Atl. 220 (1905);[4] *Du Puy v. Terminal Company,* separate

---

3. The appellant, properly, does not contend that his trial was unconstitutional because no Buddhist or other non-believer was a member of the grand or petit jury. The mere fact that no member of a race or other group was on a particular jury panel does not prove exclusion. Giles v. State, 229 Md. 370, 378, 183 A. 2d 359 (1962) and cases therein cited. The equal protection clause of the Fourteenth Amendment does not require proportional representation of all the component groups of the community on every jury. Hernandez v. Texas, 347 U.S. 475, 482 (1954).

4. In The State v. Mercer the appellee was indicted for perjury; he filed a plea in abatement alleging that the grand jury which had indicted him was not legally constituted because one of its members was an atheist and infidel who did not believe in the ex-

opinion of Bryan, J., 82 Md. 408, 444, 445, 33 Atl. 889 (1896).

The State contends that, even if an unconstitutional requirement was imposed in the selection of the juries, the appellant has shown no prejudice and therefore, as to him, no denial of a constitutional right. When the system of jury selection on its face shows discrimination and exclusion, an actual showing of discrimination on the basis of comparative numbers of the excluded and non-excluded classes on the jury lists is unnecessary; it is the danger of abuse resulting from the method of selection which renders it unconstitutional. *William v. Georgia,* 349 U. S. 375, 382 (1955); *Avery v. Georgia,* 345 U. S. 559 (1953). Here, the exclusion of non-believers from jury service is not only authorized but demanded by the Maryland Constitution. The resulting danger of abuse, under the decisions of the Supreme Court, at the least, puts the burden upon the State to show that there was no exclusion or discrimination. This burden has not been met.

Under the decision of the Supreme Court in *Torcaso,* we are constrained to hold that the provisions of the Maryland Constitution requiring demonstration of belief in God as a qualification for service as a grand or petit juror are in violation of the Fourteenth Amendment, and that any requirement of an oath as to such belief, or inquiry of prospective jurors, oral or written, as to whether they believe in a Supreme Being, is unconstitutional. For the reasons given, the challenges of the appellant to the composition of the grand jury which indicted him and the petit jury which tried him should have been upheld, and the motions to dismiss the indictment and to dismiss the petit jury panel should have been granted.

## II

We believe that the proper administration of justice requires,

istence of God nor in the truths of the Holy Scriptures. The State demurred to the plea; the lower court sustained the demurrer but this Court reversed because belief in the Holy Scriptures is not required as a qualification for a juror. In the opinion, it is said that if any of the grand jurors were incompetent, the indictment would be clearly null and void. However, this statement is only dictum; the holding of the case is that the plea in abatement alleging the incompetency of the juror was bad.

and we accordingly hold, that the legal principle enunciated in this case shall not apply retroactively, except for convictions which have not become final before rendition of this opinion.

The decision rendered today is a new ruling, reversing, because of a decision of the Supreme Court, what has been the law in this State for over a century. There is no decision of this Court, and we know of none of the Supreme Court, which prohibits our determination that, with the exception stated, our holding in this case shall not be retroactive. In *Great Northern R. Co. v. Sunburst Oil & Refining Co.,* 287 U. S. 358, 364 (1932), Mr. Justice Cardozo, in denying a federal constitutional due process attack on the prospective application of a decision of a state court, said that a State "may make a choice for itself between the principle of forward operation and that of relation backward." In *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U. S. 371, 374 (1940), Mr. Chief Justice Hughes said: "The past cannot always be erased by a new judicial declaration." *Linkletter v. Walker,* 381 U. S. 618 (1965), held that the decision of the Court in *Mapp v. Ohio,* 367 U. S. 643 (1961) requiring exclusion, in state criminal trials, of evidence seized in violation of the search and seizure provisions of the Fourth Amendment did not operate retrospectively upon cases finally decided prior to *Mapp.* In *Linkletter,* Mr. Justice Clark, in delivering the opinion of the Court, said:

> "It is true that heretofore, without discussion, we have applied new constitutional rules to cases finalized before the promulgation of the rule. Petitioner contends that our method of resolving those prior cases demonstrates that an absolute rule of retroaction prevails in the area of constitutional adjudication. However, we believe that the Constitution neither prohibits nor requires retrospective effect. As Justice Cardozo said, 'We think the federal constitution has no voice upon the subject.' " 381 U. S. at 628-29.

*Griffin v. Illinois,* 351 U. S. 12 (1956) held that the state's denial of appellate review solely on account of a defendant's inability to pay for a transcript violated the due process and equal protection clauses of the Fourteenth Amendment. Mr.

Justice Frankfurter concurred in the judgment but was of the opinion that "It is much more conducive to law's self-respect to recognize candidly the considerations that give prospective content to a new pronouncement of law." (351 U. S. at 26). Mr. Justice Frankfurter was alone in his concurring opinion but, in effect, his reasoning was followed in *Linkletter*. We follow it in this case.

In the argument before this Court, the State contended that, if we found that the appellant's constitutional rights had been denied by reason of the method of the selection of the juries, any defendant previously convicted by a jury similarly selected would have to be freed, whether or not he was a member of the excluded class. There is some support for this position. In *Allen v. State*, 110 Ga. App. 56, 137 S. E. 2d 711 (1964), the court held that the constitutional rights of a white defendant were denied if Negroes were systematically excluded from jury service. See also *Collins v. Walker*, 335 F. 2d 417 (5th Cir. 1964) *cert. denied* 379 U. S. 901 (1964) and comments thereon in 78 Harv. L. Rev. 1658 (1965) and 74 Yale L.J. 919 (1965). In the case before us, the appellant is a member of the excluded class, and we do not reach the question. However, if the State's contention were correct, and if our decision were retroactive, the result postulated by the State might logically follow. Fortunately, as Justice Holmes pointed out, the life of the law has not been logic.[5]

If, on the other hand, only a member of the excluded class can raise the constitutional question, retroactivity would still plunge the courts into a factual morass. Whether a man was a believer or a non-believer at the time of his trial, perhaps many years ago, is difficult of ascertainment. Indubitably, the retroactivity of our decision would promote retroactivity of disbelief among convicted defendants.

Moreover, the denial of constitutional rights recently declared, such as the right of an indigent defendant, on appeal, to a free transcript of his trial, *Griffin v. Illinois, supra,* or to state-pro-

---

5. "The life of the law has not been logic: it has been experience." Holmes, The Common Law 5 (Howes ed. 1963).

"If the law supposes that, said Mr. Bumble * * * the law is a ass — a idiot." Dickens, Oliver Twist, ch. LI.

vided counsel at the time of his trial, *Gideon v. Wainwright,* 372 U. S. 335 (1963), are in a different category, as to presumptive waiver, from the right to be tried by a jury in the selection of which members of the defendant's race or group have been unconstitutionally excluded.[6] A defendant, even if he had the right to object, may have been indifferent as to the method by which the jury which was to try him was selected; he might even have preferred to be tried by a jury of which he knew no member of his group could be a part. Actual waiver is far less likely as to the right to counsel at the trial and a transcript on appeal.

As in *Linkletter,* and unlike *Griffin* and *Gideon,* our decision in this case as to the method of selection of the grand and petit juries does not go to the fairness of the conduct of the trial— "the very integrity of the fact-finding process." *Linkletter,* at 381 U. S. 639.

In his opinion that *Griffin* should not be retroactive, Mr. Justice Frankfurter referred to the case of *Bingham v. Miller,* 17 Ohio 445, 49 Am. Dec. 471 (1848), in which the Supreme Court of Ohio concluded that legislative divorces were unconstitutional, but determined that its decision should not be retroactive. Other cases in which it has been held that a decision is to be prospective only are referred to in *Linkletter.* In adopting a new test of legal insanity, the Circuit Court for the District of Columbia said "we invoke our inherent power to make the change prospectively." *Durham v. United States,* 214 F. 2d 862, 874 (D.C. Cir. 1954).[7]

In the many difficult questions of constitutional law arising from criminal trials, the protection of the rights of the individual is weighed against the protection of society. Both are basic to ordered liberty. On the matter of retroactivity here involved, the dip of the scales is obvious.

---

6. In Manning v. State, 237 Md. 349, 206 A. 2d 563 (1965), we held that Gideon applied retrospectively.

7. See Levy, Realist Jurisprudence and Prospective Overruling, 109 Pa. L. Rev. 1 (1960). But see Note, Prospective Overruling and Retroactive Application in the Federal Courts, 71 Yale L. J. 907 (1962).

## III

As a separate ground for a reversal of the judgment of conviction, the appellant contends that he was denied due process of law because his requests to make telephone calls before he gave a statement were ignored and that therefore the admission of the alleged statement was invalid. While the conviction is to be reversed for the reasons given in the preceding portions of this opinion, the question of the admissibility of the statement is pertinent if the appellant is reindicted and retried. It is appropriate therefore that the issue be considered here. See *Craig v. State,* 220 Md. 590, 599, 155 A. 2d 684 (1959).

The appellant testified that, before any interrogation, while he was in the police barracks, he asked Trooper Fields if he could make a telephone call and that the trooper told him he could not and that while the appellant was in the barracks he again asked the trooper if he could make a telephone call and received no answer. On a third occasion, according to the appellant, Trooper Fields asked him if he had money and the appellant replied he did not have much money but would like "to contact with my people." The trooper, according to the appellant, told him if he did not have money and could not get a lawyer the court would appoint a lawyer for him. The appellant asked when a lawyer would be appointed and the trooper said he did not know. The appellant admitted that the troopers made no threats and did nothing to intimidate him. Trooper Fields testified that the appellant told him that his family was obtaining an attorney but the trooper did not recall any request by the appellant to make a telephone call and did not recall exactly when the appellant said that his family was obtaining an attorney.

Sergeant Kosirowsky testified that, before any questions were asked the appellant and before any statement was taken from him, he told the appellant: "It is my duty to inform you that you have a perfect right to answer any and all questions asked you and you have a perfect right not to answer any and all questions asked you. Anything you say may be used against you in court. Now that you know these facts, do you wish to make a statement? His answer was, 'Yes'." A stenographer was

present at all times when the appellant was brought in for interrogation both before and during questioning and Sergeant Kosirowsky's statement as to what he said to the appellant and the appellant's answer was confirmed by the transcript of her notes. The appellant did not contradict the Sergeant's testimony on this point.

In his testimony as to what transpired, the appellant stated that he wished to get in touch with his brother and sister to explain what had happened to him and also "probably they would give me, try to have a lawyer." After the appellant had given his statement, he was called on the telephone and was given permission by a trooper to answer it. The call was from an attorney engaged by his family.

The court, after taking full testimony, concluded that there was prima facie proof that the statement had been voluntarily given and submitted the issue of its voluntariness to the jury with careful instructions, to which no exceptions were taken.

The appellant contends that the alleged statement should have been excluded under *Escobedo v. Illinois*, 378 U. S. 478 (1964) and *Thiess v. State*, 235 Md. 541, 201 A. 2d 790 (1964). Neither of these decisions, in our opinion, is applicable to the situation here presented. The factual situation in this case differs from the facts on which the Supreme Court acted and to which it limited its holding in *Escobedo*. *Mefford and Blackburn v. State*, 235 Md. 497, 515-517, 201 A. 2d 824 (1964), *cert. denied* 380 U. S. 937 (1965). The appellant's alleged requests before his interrogation to get in touch with his family were, in effect, denied by the police and, in any event, it is uncontradicted that, before the interrogation, the appellant was expressly advised of his right not to answer any questions asked. *Thiess* is not in point. In that case, Thiess was told, although he made repeated requests to call his lawyer, that he could not call his family until he was charged.

The action of the trial judges in admitting the voluntariness of his statement to consideration by the jury was correct. *Ramsey v. State*, 239 Md. 561, 565, 212 A. 2d 319 (1965); *Bull v.*

*State,* 239 Md. 101, 210 A. 2d 396 (1965) and cases therein cited.

> *Judgment reversed and case remanded for further proceedings in conformity with this opinion.*

HORNEY, J., filed the following dissenting opinion.

It may be likely that in a proper case *Torcaso v. Watkins,* 367 U. S. 488 (1961), might require a holding that Article 36 of the Maryland Declaration of Rights, making belief in the existence of God one of the tests of competency to serve as a juror, is unconstitutional, but, in my opinion, that question is not before us in this case.

While the appellant, a follower of the Dalai Lama and an adherent of the Buddhist faith which does not teach belief in the existence of God or a Supreme Being, moved to dismiss the indictment because the grand jury was not legally constituted, and likewise challenged the petit jury as a whole on the theory that it (like the grand jury) *had been selected* in accordance with the requirement of Article 36, *supra,* the record fails to show a violation of his constitutional rights.

It is true, as the record discloses, that the lower court presumed, for the purpose of ruling on both motions, that all members of the jury panel (both grand and petit) had been selected in accordance with the constitutional requirement, *i.e.,* that the jurors believe in God, but that did not relieve the appellant, who claimed he had thereby been injuriously affected, from showing how, as to him or any other nonbeliever, the attacked declaration of right was unconstitutional. Not only is the record devoid of proof that residents of Cecil County, who were voters and taxpayers and otherwise qualified, had been systematically excluded as jurors because they were nonbelievers, but which is more significant, there was no proof that a juror had been excluded as a nonbeliever at the term of court in which the appellant was indicted and tried. Nor was it shown that a prospective juror had ever been queried as to whether he or she believed in God or that those who were drawn as grand jurors and those who were selected as petit jurors were ever required

to declare their belief in God before they were sworn as such jurors. Furthermore, because he deemed it unnecessary and useless to do so, the appellant did not inquire of any petit juror on *voir dire* whether he or she was a believer or nonbeliever.

To supply these deficiencies in the record, the majority took "judicial notice of the fact that it is and for many years has been a widespread practice in this State, not only for grand and petit jurors to be questioned as to their belief in God as a part of their oath, but also for prospective jurors to be so questioned, orally or in written interrogations, before their names are placed on the jury lists, and that any person who does not state his belief in God is excluded." Aside from the circumstance that it is questionable whether an appellate court can take judicial notice of facts as to which there was no proof whatever, and regardless of what the practice is elsewhere, it has not been, nor is it now, the common practice in the Second Judicial Circuit, composed of Cecil and the other four counties that are *cis*-Choptankia,[1] either to inquire whether prospective jurors believe in God before their names (represented by numbered marbles) are put in the jury ballot box [2] or to thereafter require a juror to declare his or her belief in the existence of God as a part of the oath they take as grand or petit jurors.[3] Rather, it is the practice, as the lower court clearly indicated, to assume that a juror is a believer in the absence of information to the contrary.

To reiterate, other than the presumption that the grand and petit jurors had been selected in accordance with law, there is not an iota of proof that the constitutional rights of the appel-

1. This (or the north side) of the Choptank River. No inquiry was made as to what the practice is in the four southern counties that are *trans*-Choptankia.

2. The jury as a whole is drawn from lists of taxpayers and registered voters by the judge with the aid of the clerk in the presence of the sheriff and the lawyers who are usually also present when the jury is drawn.

3. While a judge, in charging the grand jury, may on occasion call their attention to the constitutional requirement and its effect, and both the grand and petit jurors always take the oath "in the presence of Almighty God," the oath they take does not require a declaration of belief in the existence of God as is the case with respect to the oath of office.

lant were in fact violated. It is therefore inconceivable to me how or why a constitutional question can be decided *in vacuo* when the rule is that an ordinary question of law cannot be reviewed in the absence of facts to support the decision. See *Newark Trust Co. v. Trimble*, 215 Md. 502, 138 A. 2d 919 (1958).

In my opinion the decision of an important constitutional question such as this ought not to be based on a presumed factual situation of which there was no proof.

I would affirm on this point.

In any event the decision of the majority should not apply restrospectively. And I agree that the voluntariness of the appellant's statement to the police was properly submitted to the jury.