**Gerald Lee DAY**

v.

**Roger B. COPINGER, Warden Maryland State Penitentiary.**

**Civ. No. 19726.**

United States District Court
D. Maryland.

Dec. 1, 1969.

H. Thomas Sisk, Washington, D. C., for petitioner.

Francis B. Burch, Atty. Gen. of Md. and Alfred J. O'Ferrall, III, Asst. Atty. Gen. of Md., Baltimore, Md., for respondent.

### MEMORANDUM AND ORDER

FRANK A. KAUFMAN, District Judge.

Petitioner, presently confined in the Maryland Penitentiary, seeks habeas corpus relief in this Court for the first

time. Day was first indicted on December 31, 1964 in the Circuit Court for Prince George's County, Maryland, for murder and for assault with intent to maim. He was tried by a jury and found guilty of second degree murder, and of assault with intent to maim. He was sentenced to concurrent terms of imprisonment of eighteen years for the second degree murder and fifteen years for the assault. His appeal to the Court of Appeals of Maryland was pending when that Court filed its opinions in Schowgurow v. State, 240 Md. 121, 213 A.2d 475 (1965), and State v. Madison, 240 Md. 265, 213 A.2d 880 (1965).[1] Accordingly, the Court of Appeals remanded Day's appeal to the trial court for further proceedings consistent with *Schowgurow* and *Madison.* Upon remand, Day elected to have his conviction set aside and to have a new trial. Thereafter, a new indictment was handed down charging Day with murder and assault with intent to maim.

On July 13, 1966, after a jury trial in the Circuit Court for Prince George's County, Day was found guilty of murder in the first degree and of assault with intent to maim and was sentenced to life imprisonment for the murder and ten years for the assault, the sentences to run concurrently.

■ In his petition to this Court, Day contends that his retrial on a charge which permitted conviction for murder in the first degree after he had been found guilty in his first trial of second degree murder violated the double jeopardy provisions of the Federal

Constitution.[2] While Day has not raised his double jeopardy contention in any Maryland post-conviction proceeding, it was litigated, and determined adversely to him, during his direct appeal. Day v. State, 2 Md.App. 334, 234 A.2d 894 (1967), cert. denied, 249 Md. 731 (1968). It is thus ripe for consideration in this case. In Grundler v. State of North Carolina, 283 F.2d 798, 800 (4th Cir. 1960), the Court wrote:

> If a question is presented and adjudicated by the state's highest court once, it is not necessary to urge it upon them a second time under an alternate procedure. This was expressly held in Brown v. Allen, 1953, 344 U.S. 443, 447, 73 S.Ct. 397, 97 L.Ed. 469.

■ Day was represented by privately retained counsel when he filed his petition herein. That counsel requested this Court not to act upon Day's petition until after the Supreme Court's decision in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). In *Benton*, the Supreme Court held that the double jeopardy clause of the Fifth Amendment is applicable to the states through the Fourteenth Amendment. Under the double jeopardy doctrine, a defendant who is convicted and who thereafter obtains a new trial is not entitled to immunity from prosecution for the crime for which he was convicted. United States v. Ewell, 383 U.S. 116, 121, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). Similarly, a defendant who has been convicted in a Maryland state court and who has obtained a new trial under

---

1. Holding violative of federal constitutional standards Maryland's requirement that jurors take an oath based upon a belief in God, and conferring upon defendants whose convictions had not become final on the date the *Schowgurow* opinion was rendered (October 11, 1965) the right to elect a new trial after reindictment by a properly constituted grand jury.

2. Day also contends in this proceeding that the fact that he received a more lengthy sentence after his second trial than after his first trial violated the principles set forth in Patton v. North Carolina, 381

F.2d 636 (4th Cir. 1967), cert. denied, 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871 (1968), and in Pearce v. State of North Carolina, 397 F.2d 253 (4th Cir. 1968), aff'd, since Day commenced these proceedings, in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969). In view of this Court's holding herein in connection with Day's double jeopardy contention, it is not necessary to consider the issue he raises concerning the length of his sentence, and whether *Pearce* or *Patton* should be given retroactive application in this case.

*Schowgurow* can be retried. Sadler v. State, 1 Md.App. 383, 230 A.2d 372 (1967). *See also* Hubbard v. Warden, Civil No. 20470 (D.Md., filed April 29, 1969). Thus, Day was subject to retrial after he made his election under *Schowgurow*. The issue presented in this case, however, is whether he could be constitutionally retried by the State of Maryland for murder, including first degree murder, after a first trial in which he was found guilty only of murder in the second degree.

In Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), Green was indicted by a federal grand jury in the District of Columbia for first degree murder and was convicted in a jury trial of second degree murder. The jury was silent with regard to first degree murder. After Green's successful appeal from his conviction for second degree murder, the Government attempted to reprosecute Green for first degree murder. The Supreme Court, in a 5–4 decision, held that double jeopardy principles prevented that second prosecution for first degree murder and emphasized that the jury in the first trial had returned an implied verdict of acquittal on the first degree murder charge.

In Cichos v. Indiana, 385 U.S. 76, 87 S.Ct. 271, 17 L.Ed.2d 175 (1966), a defendant was charged with involuntary manslaughter and reckless homicide. Under Indiana law, both crimes required proof of the same elements to sustain a conviction. The main difference in the two crimes was the range of penalties.[3] After a jury found Cichos guilty of reckless homicide, and was silent as to involuntary manslaughter, Cichos was sentenced to one to five years in prison and fined $500 and costs. He successfully appealed, was retried on both counts, was convicted again of reckless homicide, was sentenced to one to five

years in prison, but was fined only $100 and costs.

Cichos, in his second trial, claimed, first, that the jury's silence at the conclusion of his original trial with respect to the manslaughter charge amounted to an acquittal under Indiana law and that, second, his retrial on that charge placed him twice in jeopardy. The Supreme Court, in a 5–4 decision, held that the Indiana Supreme Court's denial of Cichos' said first contention was binding, and that therefore the second question did not require a decision. It would appear that in *Cichos* the elements of the two crimes were essentially identical. In this case, first degree murder contains an element not included in second degree murder, i. e., premeditation.

In *Benton, supra*, petitioner therein had been tried in a Maryland state court on charges of burglary and larceny, and had been convicted on the burglary count, and found not guilty on the larceny count. After exercising his *Schowgurow* election, he was retried for both larceny and burglary and found guilty of both offenses. Mr. Justice Marshall, writing for the majority in *Benton*, held that double jeopardy principles had been violated by Benton's second trial for larceny.

Prior to *Benton*, in United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844 (2d Cir. 1965), cert. denied, Mancusi v. Hetenyi, 383 U.S. 913, 86 S.Ct. 896, 15 L. Ed.2d 667 (1966), the Second Circuit, in a 2–1 decision, held the Fifth Amendment's double jeopardy clause applicable to the states via the Fourteenth Amendment's due process clause, at least to some extent. In that case, Hetenyi was indicted for first degree murder. After a jury trial in a New York state court, he was found guilty of second degree murder and sentenced to a term of from fifty years to life. He successfully appealed and was tried a second time for

---

3. In *Cichos*, Mr. Justice White noted that under Indiana law the penalty for involuntary manslaughter was two to twenty-one years' imprisonment, Ind.Stat.Ann. § 10–3405 (1956), and for reckless homicide was a fine and a prison term of from one to five years, Ind.Stat.Ann. § 47–2001(a) (1965). Cichos v. Indiana, *supra* at 78, 87 S.Ct. 271.

first degree murder. This time a jury returned a verdict of guilty of murder in the first degree and Hetenyi was sentenced to death. Again, he successfully appealed and a third trial was ordered. After a third trial for first degree murder, Hetenyi was found guilty of second degree murder and was sentenced to a term of from forty years to life. This time his state appeal was unsuccessful. Claiming that it was unconstitutional for the State of New York to prosecute him for first degree murder subsequent to the first trial, Hetenyi then sought habeas corpus relief in a New York Federal District Court. His application was denied by the District Court, but that decision was reversed by the Second Circuit, which held (at 849):

> The Due Process Clause of the Fourteenth Amendment imposes *some* limitations on a state's power to reprosecute an individual for the same crime. [Emphasis in original.]

The dissenting judge, citing Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), in which federal double jeopardy principles had been held inapplicable to the states, and noting with accurate foresight the possibility that the test enunciated therein might in the future be overruled by the Supreme Court, stated (at 868) that he felt that that "step * * * should only be taken by [the Supreme] Court." In *Benton*, the Supreme Court took that step and held that the Fourteenth Amendment made federal double jeopardy standards applicable to the states.

Maryland indictments for murder contain no indication of degree. Md.Ann. Code art. 27, § 616 (1957). However, section 412 of the same article provides:

> And the jury before whom any person indicted for murder shall be tried shall if they find such person guilty thereof ascertain in their verdict whether it be murder in the first or second degree; * * *.

Since a Maryland jury must determine in its verdict the degree of the crime, one could argue that, when a Maryland jury chooses second degree, it inferentially decides that the defendant is not guilty of first degree. But as Mr. Justice Frankfurter pointed out in his dissent in *Green*, at 214 of 355 U.S., at 237 of 78 S.Ct., such an inference cannot be made with certainty.

In State v. Barger, 242 Md. 616, 220 A.2d 304 (1965), the defendant had been indicted for murder, tried by a jury, and found by the jury to be guilty of murder in the second degree. The jury, however, specifically acquitted him of murder in the first degree. The Court of Appeals held that, after a successful appeal reversing that judgment, double jeopardy principles prohibited the retrial of the defendant for first degree murder.

In considering the within petitioner's direct appeal after his second conviction, the Maryland Court of Special Appeals distinguished *Barger* by holding that a defendant who elects to take advantage of *Schowgurow* by invalidating his indictment and conviction, as opposed to a defendant who obtains a new trial because of errors at his first trial, starts his proceedings fresh and cannot claim any benefit on double jeopardy grounds from the previous proceedings. An almost identical contention was rejected by Mr. Justice Marshall in *Benton* (395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 at 717–718). *Benton* makes it clear that the choice of whether to exercise an election under the *Schowgurow* doctrine may not be hampered by the possibility of prosecution for an offense of which the defendant was acquitted in his first trial, any more than a decision to appeal after conviction may be so burdened.

In *Barger*, the defendant was expressly acquitted on the first degree murder charge. In this case, the jury was silent with regard to the first degree murder charge. This Court has not been referred to and has not found any Maryland murder case specifically holding or stating whether, under Maryland law, that difference is meaningful. It is to be noted, however, that the Court of Special Appeals of Maryland, in considering Day's appeal, did not mention that

distinction as a ground for its denial of the reversal Day sought. Therefore, it may well be that that Court did not desire to attribute any importance to that distinction. In that connection, *see* Stewart v. State, 4 Md.App. 565, 567 n. 1, 244 A.2d 452 (1968); Jenkins v. State, 3 Md.App. 243, 245, 248, 238 A.2d 922 (1968). *See also* Johnson v. State, 238 Md. 528, 541, 209 A.2d 765 (1964). In the last three cited cases, the lesser crime was treated as a lesser included offense within the greater offense and thus the verdict of guilty of the lesser was treated as acquittal of the greater in the face of jury silence as to the latter. But, in the opinion of this Court, the resolution of the issue in this case should not be hinged upon a determination of whether second degree murder is or is not a lesser included offense, but rather upon the principle that a man tried for two offenses and convicted of one and not the second should not again be tried for the second offense. Mr. Justice Black's language in the majority opinion in *Green*, at 194 n. 14 of 355 U. S., at 227 of 78 S.Ct., rings loud and clear:

It is immaterial whether second degree murder is a lesser offense included in a charge of felony murder or not. The vital thing is that it is a distinct and different offense. If anything, the fact that it cannot be classified as "a lesser included offense" under the charge of felony murder buttresses our conclusion that Green was unconstitutionally twice placed in jeopardy. American courts have held with uniformity that where a defendant is charged with two offenses, neither of which is a lesser offense included within the other, and has been found guilty on one but not on the second he cannot be tried again on the second even though he secures reversal of the conviction and even though the two offenses are related offenses charged in the same indictment. *See*, e. g. Annotation, 114 A.L. R. 1406.

In the majority opinion in *Benton*, in which great reliance is placed upon *Green*, Mr. Justice Marshall noted (at 798 n. 17 of 395 U.S., at 2064 of 89 S. Ct., at 178 of 23 L.Ed.2d):

There is no danger here that the jury might have been tempted to compromise on a lesser charge because of an erroneous retrial on a greater charge. *See* United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844, 866 (C.A.2d Cir. 1965), cert. denied, [Mancusi v. Hetenyi] 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966). Larceny is a lesser offense than burglary.

In the light of *Green* and *Benton*, this Court holds that a defendant who has been charged with and tried for murder, who has been convicted in a Maryland trial in which the jury, in finding him guilty of second degree murder, was silent as to first degree murder, and who has exercised his *Schowgurow* election for a new trial, cannot be charged in that second trial with first degree murder.

There remains the additional question of whether *Benton* should be given retroactive application in this case. In *Benton*, discussing Palko v. Connecticut, *supra*, Mr. Justice Marshall wrote (395 U.S., at 794, 89 S.Ct., at 2062, 23 L.Ed.2d, at 715–717, *supra*):

Recently, however, this Court has "increasingly looked to the specific guarantees of the [Bill of Rights] to determine whether a state criminal trial was conducted with due process of law." Washington v. Texas, 388 U.S. 14, 18, 87 S.Ct. 1920, 1922, 18 L. Ed.2d 1019 (1967). In an increasing number of cases, the Court "has rejected the notion that the Fourteenth Amendment applies to the States only a 'watered-down, subjective version of the individual guarantees of the Bill of Rights * * *.'" Malloy v. Hogan, 378 U.S. 1, 10–11, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653 (1964). Only last Term we found that the right to

trial by jury in criminal cases was "fundamental to the American scheme of justice," Duncan v. Louisiana, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968), and held that the Sixth Amendment right to a jury trial was applicable to the States through the Fourteenth Amendment. For the same reasons, we today find that the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment. Insofar as it is inconsistent with this holding, Palko v. Connecticut is overruled.

*Palko* represented an approach to basic constitutional rights which this Court's recent decisions have rejected. It was cut of the same cloth as Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), the case which held that a criminal defendant's right to counsel was to be determined by deciding in each case whether the denial of that right was "shocking to the universal sense of justice." *Id.*, at 462, 62 S.Ct., at 1256. It relied upon Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908), which held that the right against compulsory self-incrimination was not an element of Fourteenth Amendment due process. *Betts* was overruled by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Twining*, by Malloy v. Hogan, 378 U.S. 1, 84 S. Ct. 1489, 12 L.Ed.2d 653 (1964). Our recent cases have thoroughly rejected the *Palko* notion that basic constitutional rights can be denied by the States as long as the totality of the circumstances do not disclose a denial of "fundamental fairness." Once it is decided that a particular Bill of Rights guarantee is "fundamental to the American scheme of justice," Duncan v. Louisiana, *supra*, at 149, 88 S. Ct., at 1447, the same constitutional standards apply against both the State and Federal Governments. *Palko's* roots had thus been cut away years

ago. We today only recognize the inevitable.

The fundamental nature of the guarantee against double jeopardy can hardly be doubted. Its origins can be traced to Greek and Roman times, and it became established in the common law of England long before this Nation's independence. *See* Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (Black, J., dissenting). As with many other elements of the common law, it was carried into the jurisprudence of this Country through the medium of Blackstone, who codified the doctrine in his Commentaries. "[T]he plea of autrefoits acquit, or a former acquittal," he wrote, "is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offence." Today, every State incorporates some form of the prohibition in its constitution or common law. As this Court put it in Green v. United States, 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957), "[t]he underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense, and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." This underlying notion has from the very beginning been part of our constitutional tradition. Like the right to trial by jury, it is clearly "fundamental to the American scheme of justice." The validity of petitioner's larceny conviction must be judged not by the watered-down standard enunciated in *Palko*, but under this Court's interpretations of the Fifth Amendment double jeopardy provision. [Footnotes omitted.]

In Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), the Supreme Court in holding the exclusionary rule announced in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1969), applicable only prospectively, cited the following criteria established in Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1968), for determining retroactivity or prospectivity:

(1) "the purpose to be served by the new standards,"

(2) "the extent of the reliance by law enforcement authorities on the old standards, and"

(3) "the effect on the administration of justice of a retroactive application of the new standard."

[4] The underlying purpose of the standards reiterated and stated by *Benton* are clearly set forth in the above-quoted portions of that opinion. They are basic to the common law; their application to the states via the Fourteenth Amendment has long been foreshadowed; and, indeed, the states themselves have historically imposed almost identical standards upon themselves. *See*, e. g., State v. Barger, *supra*. Finally, the retroactive application of the *Benton* standards to a second trial following a *Schowgurow* election would not appear to create any undue burden on the future administration of justice in the State of Maryland, in view of the doctrine announced in *Barger* in 1965 by the Court of Appeals of Maryland. In summary, this Court holds that the *Benton* standards are retroactively applicable in this case and that Day is entitled to relief because of his second trial upon a charge including the element of first degree murder.

[5] A further question arises because Day was twice indicted and convicted not only for and of murder but also for and of assault with intent to maim. The issue is thus presented as to whether Day's conviction of assault with intent to maim, in his second trial, should be set aside because it was part and parcel of a trial which unconstitutionally included, and of course highlighted, the element of first degree murder. In *Benton*, the Supreme Court, faced with the question of whether the burglary conviction in the second trial should be set aside because it resulted from a proceeding in which the larceny charge was erroneously included, remanded the case to the Maryland court to determine whether the burglary conviction was affected by the double jeopardy violation. This Court will follow that lead and direction in connection with the assault charge, particularly since it appears that no question concerning it has been raised by Day in any Maryland state court to date.

For the reasons stated, this Court denies Day's petition for a writ of habeas corpus, as of this time, to the extent that the petition for that writ by Day seeks his release from confinement as a result of his conviction for the offense of assault with intent to maim, but grants said petition with regard to Day's continued confinement resulting from his conviction at his second trial for the offense of murder.[4]

This Court's grant of Day's petition, with regard to Day's conviction for murder, is hereby stayed to permit respondent to file an appeal from the holding by this Court to the Fourth Circuit within the time provided for such an appeal. If respondent does not so appeal, it should either promptly calendar and afford Day a new trial in which any consideration of the element of first degree murder is excluded, or take steps to strike from the records of the State of Maryland Day's conviction for murder. With regard to Day's conviction for assault with intent to maim, Day is hereby advised that if he desires to pursue his

---

4. Day, in addition to seeking habeas corpus relief, has addressed a communication to this Court, on November 12, 1969, asking this Court to set bail and to release him from confinement. That motion is hereby denied.

contention that his conviction for that latter offense is illegal, he must first exhaust his state remedies by proceeding in the following manner:

1. Petitioner should file a petition for post-conviction relief in the Circuit Court for Prince George's County, raising that claim.

2. If relief is denied by that Court, petitioner should apply for leave to appeal to the Court of Special Appeals of Maryland within thirty days after such denial.

3. If leave to appeal is denied by that Court, petitioner may then apply for a writ of habeas corpus in this Court.

4. If leave to appeal is granted by the Court of Special Appeals of Maryland, but relief is denied, petitioner should file a petition for certiorari to the Court of Appeals of Maryland.

5. If that Court denies certiorari, or, after granting certiorari, denies relief, petitioner may then apply for a writ of habeas corpus in this Court.

It is so ordered. The Clerk is directed to send a copy of this opinion to petitioner and to counsel of record for both parties.*