## TULL *v.* WARDEN, MARYLAND PENITENTIARY

[App. No. 1, September Term, 1971.]

*Decided June 1, 1971.*

Before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

HAMMOND, C. J., delivered the opinion of the Court.

In the early hours of September 25, 1961, James Omar Tull shot and killed his father-in-law, Paran Dashiell, and clubbed his wife to death with the butt of the gun. The crimes occurred in Somerset County and the case charging Tull with the murder of his wife was removed to Dorchester County, where a jury found him sane at the time of the commission of the crime (two psychiatrists at Clifton Perkins Hospital testified that he was sane, had the capacity to tell right from wrong and could understand the consequences of his acts; a third psychiatrist at the hospital, Dr. Prado, testified diametrically to the contrary) and guilty of murder in the first degree. He was sentenced to death after a motion for a new trial had been denied. In *Tull v. State,* 230 Md. 596, the Court of Appeals affirmed the judgment on February 12, 1963, the mandate being received by the Circuit Court for Dorchester County on March 15, 1963.

On April 16, 1963, Tull filed a second motion for a new trial, asserting that the "major defense" at his trial was that he was insane at the time of the crime and that he had ascertained that in addition to Dr. Prado, an em-

ployee of Clifton Perkins Hospital, one Ralph P. Oropollo, a clinical psychologist, thought he was insane. The Circuit Court stayed execution, heard Mr. Oropollo and a year later granted Tull's motion and ordered a new trial. The State appealed, and in *State v. Tull,* 240 Md. 49, the Court of Appeals reversed, holding that the trial court had no power to grant a new trial at the time it did so. We treated the motion as a petition for post conviction relief and the appeal as a motion for leave to appeal, and on August 20, 1965, held that Tull had presented no grounds for relief, saying: "We find no violation of or any affront to any fundamental or basic right of Tull, common law or constitutional, which made his original trial unfair or invalid."

Tull sought relief in the United States District Court for the District of Maryland on a writ of habeas corpus and on December 12, 1967, Judge Northrop denied his petition. In a memorandum decision filed on October 2, 1968 by Judges Sobeloff, Haynsworth and Butzner, the Court of Appeals for the Fourth Circuit dismissed the appeal, saying:

> "The petitioner's reliance on *Schowgurow,* however, does not provide a basis for relief. The petitioner's conviction became final in 1963, and *Schowgurow,* which was decided on October 11, 1965, was given only prospective application by the Maryland Court of Appeals. This court upheld the validity of the Maryland decision not to apply *Schowgurow* retroactively. *Jacobs v. Brough,* 375 F. 2d 606 (4th Cir. 1967). Therefore, Tull cannot base a claim for relief on *Schowgurow.*"

On April 11, 1968, Tull filed a petition for habeas corpus in Dorchester County. Subsequently, after counsel were appointed, the petition was treated and decided as a post conviction case. In the petition (and two supplements) Tull makes contentions which may be summarized thus: (1) he was not given a fair trial; (2) his

trial counsel were incompetent; and (3) his confession was involuntary and should not have been received at his trial.

Tull primarily relies on the claim that the jury which convicted him was unfairly constituted because it excluded all jurors, otherwise qualified, who did not profess a belief in God, citing *Schowgurow v. State,* 240 Md. 121.

He claims that his conviction did not become final until ninety days after August 20, 1965 (the date this Court reversed the lower court's grant of a new trial), and therefore under *Schowgurow,* which was decided on October 11, 1965, he was entitled to a new trial. The United States Court of Appeals for the Fourth Circuit in *Jacobs v. Brough,* 375 F. 2d 606, upheld the determination of this Court not to apply *Schowgurow* retroactively but rather only to convictions that had not become final on October 11, 1965. We agree with the United States Court of Appeals for the Fourth Circuit that Tull's conviction became final in 1963 and therefore *Schowgurow* has no application. Appellant's conviction became final ninety days after the rendition of the opinion on February 12, 1963, affirming the judgment of the Circuit Court for Dorchester County in the original trial. *Terry v. Warden,* 243 Md. 610, 612. The action of the Circuit Court in granting a new trial in 1964 was a nullity since the court lacked the power to act.

Tull seeks to bolster his contention that his trial was unfair by asserting (a) that the jury was illegally constituted because Dorchester County systematically excluded blacks from jury panels and (b) that in closing argument the State's Attorney told the jury to find him guilty, for if they did not they would have a rapist in the community.

The only testimony before Judge Travers was that given by Tull. His testimony was found by Judge Travers, justifiably, we think, to be only bald assertions without support. The claim as to his being characterized as a rapist was made for the first time below and, since

rape was not involved or referred to in any way at the trial, the likelihood of the prosecution having brought it before the jury seems slight and supports Judge Travers' remark that he seriously doubted, in the absence of substantiation, that the reference ever was made.

The claim of incompetence of counsel is based on his statements that neither of his two lawyers objected to any part of the closing argument or to the jury panel or to the change of venue to Dorchester County (which he appears to regard as being changed from the frying pan to the fire). As we have noted, there was no proof that there was anything to object to in the closing argument or as to the jury panel. Counsel did procure a thorough voir dire examination of prospective jurors. There is nothing whatever to show that Dorchester County was not an entirely suitable jurisdiction in which to try Tull.

We note that in *Tull v. State* at p. 604 of 230 Md. we said that counsel for Tull had ably presented his case on appeal and we add that before considering Tull's contentions as to unfairness and incompetence, we reread with care all the pleadings and testimony in both *Tull v. State* and *State v. Tull,* in both of which Messrs. Hughes and Bahen represented Tull, and we find that the trial appears to have been scrupulously fair and counsel to have been perceptively and alertly competent throughout. The State established beyond any question by testimony that included the observations of an eyewitness that Tull brutally beat his wife to death. The only defense available was that he was insane and could not and did not do so with premeditation. His lawyers pressed those defenses as well and as fully as they could be pressed, but the contrary testimony left little real doubt—as the jury found—that Tull was sane and did premeditate.

There remains only the confession. Tull apparently seeks to come under *Miranda v. Arizona,* 384 U. S. 436, 16 L.Ed.2d 694. *Miranda* was decided in 1966 and was not applied retroactively. Tull's conviction became final in 1963. If the confession is tested on voluntariness in

fact, the record in *Tull v. State* leaves no room for debate that there was no overreaching or inducing in fact or in law and that the confession was made after full advice as to his rights and was completely voluntary. Tull's lawyers did not object at the trial to the introduction of the confession—after the State had proven the chain of custody and the genuine voluntariness of the confession—and they did not challenge the confession on either appeal. Obviously, this is because the State demonstrated by other testimony that what the confession said happened had happened, and the only defense was not that it did not happen but that Tull was not legally responsible for making it happen. That this defense did not succeed does not help Tull now, either on his objection to the confession or in his claim to incompetence of counsel.

*Application denied.*