483 A.2d 783

**Ond Nelson STOVER**

v.

**Hope Brakenwagen STOVER.**

**No. 168, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Nov. 14, 1984.

Robert A. Diemer, Lanham, with whom were Deimer & Baker, Lanham, on brief, for appellant.

Francis J. Ford, Rockville, with whom were Michael P. Chervenak and Ford & O'Neill, Rockville, on brief, for appellee.

Argued before GILBERT, C.J., and WILNER and GARRITY, JJ.

GILBERT, Chief Judge.

Ond Nelson Stover seeks to have us brush aside the crystal clear holding of *Boblitz v. Boblitz*, 296 Md. 242, 462 A.2d 506 (1983), and declare that case's prospective application of the abrogation of interspousal immunity "unconstitutional" and "dictum." To understand why Stover urges this Court to so hold, a short recitation of the factual predicate for this litigation is in order.

From the pleadings in the record we learn that on May 22, 1983, Stover was near a garage located on his property when a motor vehicle operated by his wife, Hope Brakenwagen Stover, accelerated and struck him. Stover sustained serious personal injury. A little over a month later the Court of Appeals handed down its decision in *Boblitz* in which it abrogated prospectively the doctrine of interspousal immunity insofar as it applied to negligence actions.

On September 29, 1983, Stover sued his wife in negligence in the Circuit Court for Montgomery County. Judge William M. Cave granted Hope B. Stover's motion for summary judgment and entered judgment in her favor.

In this Court, Stover first assails what he characterizes as the "ambiguous language" of *Boblitz*. We, however, think *Boblitz* to be straightforward and unambiguous.

### *Application of abrogation*

In the discussion in which it made transpicuous that it was abolishing the interspousal immunity doctrine, the *Boblitz* Court left no room for doubt as to what its holding applied. The Court said, at 275, 462 A.2d 506:

> "[W]e abrogate the interspousal immunity rule in this State as to cases sounding in negligence *and apply the abrogation to this case and prospectively to all such causes of action accruing after the date of the filing of the opinion in this case [June 30, 1983]."* (Emphasis supplied.) (Footnote omitted.)

 *Boblitz* does not apply to causes of action accruing on or prior to June 30, 1983, but filed thereafter. It is unmistakable that interspousal abrogation applies only to *Boblitz* and to those cases arising from events occurring on or after July 1, 1983, or wrongs which were discovered after that date under the discovery rule. There can be no doubt that the discovery rule does not apply to Stover. We perceive no ambiguity in *Boblitz*, and Stover's claim to the contrary is devoid of merit.

We turn now to Stover's other issues, because unless *Boblitz*'s prospective holding is unconstitutional or dictum that may be disregarded, this appeal must fail.

### Constitutionality

■ Stover avers that limiting *Boblitz*'s holding to matters occurring prospectively, denies him equal protection of law, thus violating the Fourteenth Amendment of the Constitution of the United States and Article 24 of the Declaration of Rights to the Maryland Constitution. Stover is wrong.

The Supreme Court of the United States has upheld the prospective application of State judicial rulings. One of the Supreme Court's most renowned jurists, Justice Benjamin Cardozo, wrote for the Court in *Great Northern Railway Co. v. Sunburst Oil*, 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360, 366 (1932):

"This is a case where a court has refused to make its ruling retroactive, and the novel stand is taken that the constitution of the United States is infringed by the refusal.

We think the federal constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions."

*See also Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Prospective rulings are commonly accepted. *See e.g., Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Tehan v. Shott*, 382 U.S. 406, 416–18, 86 S.Ct. 459, 465–66, 15 L.Ed.2d 453, 460–61 (1966). For a "purely prospective" application of a holding, see *England v. Medical Examiners*, 375 U.S. 411, 422–23, 84 S.Ct. 461, 468, 11 L.Ed.2d 440, 449 (1964), wherein the Court

applied a newly articulated rule prospectively, but not to the case before it at the time it announced the rule.

The power of the Court to apply its ruling prospectively to new holdings is absolutely necessary to an orderly administration of the law. One need not look far to see the havoc that would be created if, in a given case, the Supreme Court, or the State's highest Court, or this Court handed down a decision requiring that all criminal cases be tried and decided within 120 days from the date of arrest, and that decision were made applicable to all then pending cases as well as to persons whose sentence had not expired. Such a holding would be tantamount to an opening of the prison doors, a general release of the prison populace. Needless to say, it is highly unlikely that the courts would be so insensitive to societal protection that such an event would ever occur.

It is not impossible, however, for courts to apply a new rule to the case then before it as well as to all cases arising on or after a particular date. If courts were not free to use the effective method of a prospective application of a ruling, they might find themselves indulging in a fiction that the law was always as newly announced, and those who had not availed themselves of it had waived it. It is far better to be intellectually straightforward, disregard the fiction, and utilize the prospective application of the new ruling. *See* concurring opinion of Justice Frankfurter in *Griffin v. Illinois*, 351 U.S. 12, 25–26, 76 S.Ct. 585, 593–94, 100 L.Ed. 891, 902–03 (1956).

The Court of Appeals in *Schiller v. Lefkowitz*, 242 Md. 461, 476, 219 A.2d 378 (1966), *cert. denied*, 385 U.S. 947, 87 S.Ct. 319, 17 L.Ed.2d 226 (1966), implicitly upheld the prospective application of rulings when it wrote that neither Schiller's federal nor State constitutional rights were violated by the nonretroactive application of the holding in *Schowgurow v. State*, 240 Md. 121, 213 A.2d 475 (1965). *Schowgurow* declared that it was unconstitutional to require that persons express a belief in God in order to be eligible to serve as jurors. The *Schowgurow* holding made

manifest that it was "not [to] apply retroactively." 240 Md. at 132, 213 A.2d at 486.

Neither *Boblitz* nor *Schowgurow* was "purely prospective" in scope because each applied its ruling to itself. *See Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601. The purpose of applying a new ruling to the case in which that rule was first decided is obvious: if the litigant who successfully contests a standing rule of law is denied relief because the new rule only applies purely prospectively, there would be little motivation to attack settled rules of law. Few persons are so altruistic as to be self-sacrificing.

### Alleged "dictum"

Stover mounts one final assault on *Boblitz,* namely, that the prospective ruling was dictum. He asserts that since it was dictum, this Court is free to ignore what the *Boblitz* Court said. We have an entirely different view.

The Court's concluding paragraph in *Boblitz* was, as quoted above, that the interspousal immunity rule was abrogated in negligence cases and that the abrogation was to apply to *Boblitz* and all similar cases accruing after June 30, 1983. To characterize the crystalline holding of *Boblitz* as "dictum" either demonstrates a misconception of dictum or a distortion of its meaning. Dictum is defined to mean any statement made by a court for use in argument, illustration, analogy or suggestion. It is a remark, an aside, concerning some rule of law or legal proposition that is not necessarily essential to the decision and lacks the authority of adjudication. *Black's Law Dictionary,* 409 (5th ed. 1979).

Although this Court is not bound by dicta contained in opinions filed by the Court of Appeals, we are ordinarily compelled to adhere to precedent that septenary body pronounces. As we read *Boblitz,* that which Stover asperses as "dictum," we consider to be the holding.

We hold that Judge Cave did not err in entering summary judgment for Mrs. Stover.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.